## BENJAMIN WILSON vs. CITY OF NEW BEDFORD.

One who accumulates water artificially on his own land is liable for injuries resulting to adjoining land from percolations through the soil, caused by the pressure of the accu - mulated mass, or from the obstruction, by that cause, of the natural passage of water through the soil from such land.

A conveyance of land for the purpose of erecting a reservoir thereon is no bar to the re-covery of damages by the grantor for injuries resulting to his adjoining land from per-colations through the soil, caused by the pressure of the water in the reservoir.

PETITION to the superior court, filed January 1, 1869, under the St. of 1863, c. 163,* by the owner of a farm, with a dwelling-house and barn thereon, in the town of Acushnet ; representing that the city of New Bedford, by virtue of that statute, "has constructed a large dam, reservoir and pond of water, near his said farm, for the purposes mentioned in said statute, thereby causing large quantities of water to flow into and through his said barn cellar and house cellar, and also making his farm land very wet, cold and heavy, greatly injuring the same and partially destroying his crops, thereby and in other ways causing him great

---

* The St. of 1863, c. 163, in § 1, authorized the city of New Bedford to take, hold and convey into and through the city by suitable aqueducts the waters of the Acushnet River and its tributary streams, and also to take and hold, by purchase or otherwise, for that purpose, any land or water rights nec essary for erecting, laying and maintaining the reservoirs, pipes or other struc tures necessary or convenient therefor; and made special provision for the location of a dam across the river, in event of its erection as one of the con-templated structures.

In § 3, it provided for the choice, by the city council, of water commission-ers to superintend and direct the execution and performance of the water-works.

In § 6, it was enacted that the city should " be liable to pay all damages that shall be sustained by any persons in their property by the taking of any land, water or water rights, or by the constructing of any dams, aqueducts, reser-voirs, or other works, for the purposes of this act;" and that, in case the per-son injured should not agree upon the amount of his damages, he might apply by petition to the superior court, within three years from the time he sustained them, for their assessment by three freeholders to be appointed by the court.

In § 8, provision was made for a trial by jury in event of dissatisfaction of either party with the awai d of the freeholders.

loss and damage ; " and further representing that the petitioner
" has made repeated application to said city and the water com-
missioners appointed under said statute, for the payment of said
damages, but they have not paid the same ; " and therefore pray-
ing for the appointment by the court of three disinterested free-
holders to assess his damages, and " that such proceedings may
be had in the premises as the law in such cases requires."

The answer denied generally all the petitioner's allegations,
and alleged " that the city purchased of the petitioner a certain
lot of land, and took a deed thereof, for the purpose of erecting
and building a reservoir and dam, and paid him all he asked
therefor, and that, if the facts alleged in the petition are true, the
defendants are not liable in this form and manner."

At the trial, before *Wilkinson*, J., it appeared that the city, in
constructing waterworks under the statute, built a dam, and
thereby created a pond or reservoir of water, at a place about a
thousand feet distant from the petitioner's farm, and " alongside
of it ; " and that since the construction of this dam and reservoir
water had appeared in the cellars of his house and barn, and in
wells on the farm, and in the soil of the farm, in a manner which
he contended was injurious to the value of his property and was
caused by the dam and reservoir. The land between the farm
and the reservoir was higher than the level of the petitioner's cel-
lars ; and he did not contend that the water came into them as a
result of the overflowing of the pond or reservoir, but contended
that it " either came from the pond by percolation or underground
streams, or was caused by the pond's preventing the natural pas-
sage of water underground into the natural stream on which the
dam is constructed, and causing said water to pass into or remain
in his premises and cellars." The city contended that, if this
was so, it was not liable for any damage so resulting.

It appeared that the city had purchased of the petitioner the
fee of the land covered by the dam and pond, and of a strip of
land surrounding them ; and the city put in evidence the written
agreement of the petitioner, dated February 8, 1864, for the sale
of all that land to the city, and his deed of the land, executed
and delivered on April 6, 1869. The agreement was for a con-

veyance by the petitioner to the city of twelve acres of land "for the purpose of constructing, using and maintaining an aqueduct and reservoir and all other works necessary and convenient for the introduction of water into the city." The deed was a deed in the usual form, for a pecuniary consideration, of full warranty of the land, described by metes and bounds, " together with a right of way for passing and repassing to and from the highway to and upon the land hereby conveyed for the uses of said grantee and its successors and assigns, and [as ?] the same is now and has been used by said grantee in the construction of said dam." It further appeared that the water of which the petitioner complained first came into his land during the summer of 1867, nearly two years before his delivery of the deed, and the city contended that the agreement and the deed were a bar to the petition.

The judge reported these questions of law for the determination of this court before verdict, the petition to be dismissed if it could not be maintained on the foregoing facts, and otherwise the case to stand for trial.

*E. H. Bennett*, (*H. J. Fuller* with him,) for the petitioner.

*C. W. Clifford*, (*G. Marston* with him,) for the respondents. 1. The city is not liable under the statute, unless the damage would have been good ground for an action without the statute. *Caledonian Railway Co.* v. *Ogilvy*, 2 Macq. 229. *In the matter of Penny*, 7 El. & Bl. 660. *New River Co.* v. *Johnson*, 2 El. & El. 435, 442. *Regina* v. *Metropolitan Board of Works*, 3 B. & S. 710, 727. *New Albany & Salem Railroad Co.* v. *Peterson*, 14 Ind. 112. *Fitchburg Railroad Co.* v. *Boston & Maine Railroad*, 3 Cush. 58, 88. *Davidson* v. *Same*, Ib. 91, 105. *Parker* v. *Same*, Ib. 107, 114. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad Co.* 10 Cush. 385, 388. *Mellen* v. *Western Railroad Co.* 4 Gray, 301. *Dodge* v. *County Commissioners*, 3 Met. 380, 382. *Boston & Worcester Railroad Co.* v. *Old Colony Railroad Co.* 12 Cush. 605, 606. *Rood* v. *New York & Erie Railroad Co.* 18 Barb. 80, 83. *Van Wyck* v. *Alliger*, 6 Barb. 507, 510.

2. The alleged damage is *damnum absque injuriâ* at common law. *Acton* v. *Blundell*, 12 M. & W. 324. *Chasemore* v. *Richards*, 7 H. L. Cas. 349. *New River Co.* v. *Johnson*, 2 El. & El. 435. *Regina* v. *Metropolitan Board of Works*, 3 B. & S. 710. *Smith* v. *Kenrick*, 7 C. B. 515. *Greenleaf* v. *Francis*, 18 Pick. 117. *Roath* v. *Driscoll*, 20 Conn. 533. *Frazier* v. *Brown*, 12 Ohio State, 294. *Chatfield* v. *Wilson*, 28 Verm. 49. *Harwood* v. *Benton*, 32 Verm. 724. *Pixley* v. *Clark*, 32 Barb. 268, and 35 N. Y. 520.

3. The petitioner is estopped by his agreement and deed. Gale on Easements, 51, 52. Goddard on Easements, 85. Washburn on Easements, 34, and cases cited. *Pyer* v. *Carter*, 1 H. & N 916. *Dodd* v. *Burchell*, 1 H. & C. 113. *Worthington* v. *Gimson*, 2 El. & El. 618. *Suffield* v. *Brown*, 33 L. J. N. S. (Ch.) 249. *Pearson* v. *Spencer*, 3 B. & S. 761. *Polden* v. *Bastard*, 7 B. & S. 130. *Ewart* v. *Cochrane*, 4 Macq. 117. *Thayer* v. *Payne*, 2 Cush. 327. *Babcock* v. *Western Railroad Co.* 9 Met. 553. *Johnson* v. *Jordan*, 2 Met. 234. *Adams* v. *Frothingham*, 3 Mass. 352. *Hathorn* v. *Stimson*, 10 Maine, 224. *Wetmore* v. *White*, 2 Caines Cas. 87. *Rood* v. *New York & Erie Railroad Co.* 18 Barb. 80. *Hortsman* v. *Covington & Lexington Railroad Co.* 18 B. Monr. 218.

CHAPMAN, C. J. The act of 1863, *c.* 163, for supplying the city of New Bedford with pure water, grants authority to the city to exercise the right of eminent domain by taking the land and streams therein named, erecting dams and laying water pipes. By § 6, the city is made liable to pay all damages that shall be sustained by any persons in their property by the taking of land, water or water rights, or by the construction of any dams, aqueducts, reservoirs or other works for the purposes of the act. This provision is in conformity with the tenth article of the Declaration of Rights; and both the grant of authority and the obligation to make compensation are to have a reasonable interpretation.

The city has taken the stream mentioned in the petition, and erected a dam across it, thereby creating a reservoir. The petitioner alleges that this reservoir has caused damage to him by reason of the percolation of water from the reservoir, under-

ground, to his house cellar and barn cellar, about a thousand feet distant from the dam, and alongside of it, and preventing the natural passage of water underground into the natural stream on which the dam is constructed. The respondents contend that they are not liable to make compensation for an injury of this character.

It is true that the rights of neighboring proprietors of lands in underground waters which remain still, or naturally percolate through the soil without forming channels, are very different from their rights in watercourses. The percolating water belongs to the owner of the land, as much as the land itself, or the rocks and stones in it. Therefore he may dig a well, and make it very large, and draw up the water, by machinery or otherwise, in such quantities as to supply aqueducts for a large neighborhood. He may thus take the water which would otherwise pass by natural percolation into his neighbor's land, and draw off the water which may come by natural percolation from his neighbor's land; and his neighbor may, by a wall or other obstruction, retain the water which is upon his own land, and prevent the water from coming into his soil. This principle was discussed in *Greenleaf* v. *Francis*, 18 Pick, 117; and afterwards in *Chasemore* v. *Richards*, 7 H. L. Cas. 349; and also in several other cases in England and this country. But the present case is of a different character. The respondents have so raised their dam and reservoir as to cause an artificial pressure of the water through the soil, and by its action it has flooded the petitioner's cellars. Probably it cannot be ascertained precisely how it acts underground.

In this Commonwealth, complaints under our mill acts have for many years presented cases quite similar to this. Lands are overflowed by mill ponds, and instead of an action at common law a process is provided by statute for the recovery of damages, quite similar to the process in this case. The question what kind of damages should be estimated has been discussed and settled in several cases. In *Monson & Brimfield Manufacturing Co.* v. *Fuller*, 15 Pick. 554, it was decided that damages occasioned by the percolation of water through the earth from the pond to neighboring uplands, and causing them to produce poorer grass

or a smaller quantity of grass, could be recovered. In *Fuller* v. *Chicopee Manufacturing Co.* 16 Gray, 46, it was decided that damages occasioned by raising the pond, so as to affect injuriously the water of the plaintiff's well, were recoverable; and no distinction was made as to whether it affected the well by overflowing or percolation. This principle is just; for the water often injures land which it never overflows; and where the soil is porous, the water may by percolation render a dwelling-house uninhabitable, or destroy the value of large tracts of land. Upon the same principle, it was held in *Ball* v. *Nye*, 99 Mass. 582, that it was actionable to cause filthy water to percolate from the defendant's vault through his own soil and thence into his neighbor's soil, and thus injure his neighbor's well and cellar. In *Pixley* v. *Clark*, 35 N. Y. 520, the same principle was held in regard to water which percolates through the banks of a reservoir created by erecting a dam across a stream, and damages the plaintiff's land. *Rylands* v. *Fletcher*, Law Rep. 3 H. L. 330, affirming the decision of the exchequer chamber, states the same principle, in application to a reservoir created artificially, from which the water flowed through some passages apparently filled up, and long disused, into the plaintiff's mine. Lord Cranworth, in delivering his opinion, said : " If a person brings or accumulates on his land anything which, if it should escape, may cause damage to his neighbor, he does so at his peril. If it does escape and cause damage, he is responsible, however careful he may have been, and whatever precautions he may have taken to prevent the damage." He distinguishes between natural percolation and that which is caused artificially. On this point he says : " If water naturally rising in the defendant's land had by percolation found its way down to the plaintiff's mine through the old workings, and so had impeded his operations, that would not have afforded him any ground of complaint." " But that is not the real state of the case. The defendants, in order to effect an object of their own, brought on to their land, or on to land which for this purpose may be treated as being theirs, a large accumulated mass of water, and stored it up in a reservoir. The consequence of this was damage to the plaintiff, and for that damage,

however skilfully and carefully the accumulation was made, the defendants, according to the principles and authorities to which I have adverted, were certainly responsible."

The cases cited from Vermont are, to some extent, in apparent conflict with these authorities. They do not seem to distinguish, as these authorities do, between natural and artificial causes of injury.

We think the petitioner's claim is not only sustained by authority, but is founded on justice. He ought to be compensated for such an injury as the petition describes, and the law would be defective if it failed to give him a remedy.

The agreement which was made by the petitioner to sell to the respondents a tract of land on the stream, and the deed made by him in conformity thereto, are not to be construed as a release of damages for any injuries which the respondents might occasion to his other land. The agreement relates merely to the land to be conveyed, and the deed conveys merely the land and a way thereto. Neither of them purports to be a release of damages, and we think the same rule of construction is to applied to them which was applied to the conveyance in *Lyman* v. *Boston & Worcester Railroad Co.* 4 Cush. 288.

*Case to stand for trial.*