[Argued July 2; decided November 13, 1893.]

ESSON v. WATTIER.

[S. C. 34 Pac. Rep. 756.]

1. Injunction — Nuisance — Equity.—A court of equity will restrain the continuance of a nuisance when the complainant will sustain some irreparable injury, or be compelled to resort to a multiplicity of actions for damages; but this general rule is subject to this limitation, that the complainant must allege and prove that he has sustained some private, direct damage other than that suffered by the public at large. *Luhrs* v. *Sturtevant*, 10 Or. 170, approved and followed.

2. Injunction to Restrain Erection of Dam — Overflow of Waters.— The construction of a dam will not be enjoined on the ground that it will cause the water to overflow the banks of the river and flood plaintiff's land, unless it is shown that in consequence of the existence of the dam, lands belonging to plaintiff will be submerged which would not otherwise be.

3. Injunction — Nuisance.— To justify a court of equity in interfering by injunction to abate a nuisance, the nuisance must be an actual existing offense, and not merely apprehended.

Appeal from Marion : Geo. H. Burnett, Judge.

This is a suit by Alexander Esson against Vallier Wattier to enjoin the defendant from constructing a dam across Big Pudding River, in Marion County. The facts show that plaintiff owns and resides upon a tract of land containing about three hundred and twenty acres, the southern boundary of which, at the nearest point, and about four fifths of a mile above defendant's dam, is separated from the river by a bank about eight feet wide. Poison Lake, a low, marshy tract, lies east of, and partly upon, plaintiff's land, from which a creek flows northwest, and empties into the river below the dam. This river is a sluggish stream, having a fall of about three feet to the mile, and its banks, above the dam, are twelve to twenty feet higher than the ordinary stage of water. The winter freshets, however, cause the river to rise rap-

idly and back the water into Poison Lake, and plaintiff's land is liable to be submerged thereby. The defendant owns a saw and gristmill at Parkersville, valued at about eighteen thousand dollars, which are operated by water supplied through races from the river, and from Lake Labish. The defendant's predecessor in interest, in eighteen hundred and fifty-four, built a brush dam about twelve feet high across the river, which, in eighteen hundred and eighty, was in part carried out by a freshet, and the defendant, from time to time thereafter, tore down the remainder, and in eighteen hundred and ninety-one began to drive piles in its place, to build a new one eight feet high, when this suit was commenced. Plaintiff alleges that if the dam be erected the following injury will result: (1) It will obstruct a public navigable stream, but he does not allege that he will sustain any personal injury thereby; (2) that the water will percolate through the soil, and seventy-five acres of his land will be flooded by backwater, and become wet and unproductive, thus causing him irreparable injury, and necessitate successive actions from year to year to recover his damages; (3) that the water in the pond will become foul, stagnant, and unhealthy, impregnating the atmosphere with malaria, and that he and his family will be exposed to the danger of having their health impaired thereby. The issues being joined, the testimony was taken before a referee, and at the hearing the court, having found that the equities were with the defendant, made a decree dissolving a temporary injunction that had been issued and dismissing the complaint, from which the plaintiff appeals. AFFIRMED.

*Messrs. B. F. Bonham* and *W. H. Holmes,* for Appellant.

In support of our claim that the defendant should be enjoined from erecting his proposed mill dam eight feet

in height across Pudding River, we refer to the well-established rule of law that every one must so use his own property as not to materially injure or discommode his neighbor. That the proposed mill dam if erected will constitute a public nuisance in the neighborhood by overflowing the lands of the plaintiff and those of others in the same vicinity, and rendering large areas unfit for tillage or other profitable use is, we think, clearly established by the testimony.

In support of our positions as set forth in the complaint, we cite the following authorities: *Mills* v. *Hall*, 9 Wend. 315, 24 Am. Dec. 160; *People* v. *Cunningham*, 1 Denio, 536, 43 Am. Dec. 709; *Rhodes* v. *Whitehead*, 27 Texas, 304, 81 Am. Dec. 531; *Pettis* v. *Johnson*, 56 Ind. 139; *New Salem* v. *Eagle M. Co.* 138 Mass. 8; *Neal* v. *Henry*, 33 Am. Dec. 125; *Treat* v. *Bates*, 27 Mich. 390; *White* v. *Forbes*, Walker Chan. R. (Mich.) 112; *Pixley* v. *Clark*, 35 N. Y. 520, 91 Am. Dec. 72; *Marsh* v. *Trullinger*, 6 Or. 356; *Wilson* v. *New Bedford*, 108 Mass. 261, 11 Am. Rep. 352.

*Mr. Geo. H. Williams* ( *Mr. C. E. S. Wood* on the brief), for Respondent.

1. In the first place, the plaintiff does not state in his complaint facts sufficient to constitute a cause of suit. It is well settled that a private person cannot maintain a suit to abate a public nuisance unless he can show some special injury distinguished from that sustained by the public: *Luhrs* v. *Sturtevant*, 10 Or. 170.

2. Plaintiff does not pretend that the proposed dam will cause the water of the river to overflow its banks at ordinary stages, but he alleges that in times of freshet the water will overflow its banks; and all the evidence is to the same effect, and conclusive that it is only when there is an unusual flood that the water of the river will flow

out of its banks. Certainly no injunction ought to be granted upon such a state of facts: *Smith* v. *King*, 23 Atl. 923; *Smith* v. *Agawam Canal Co.* 84 Mass. 355; *China* v. *Southwick*, 12 Me. 238; *Monongahela Nav. Co.* v. *Coon*, 6 Pa. St. 379, 47 Am. Dec. 474.

3. No facts are stated showing that the proposed dam, if constructed, will injure the plaintiff. He simply states his apprehensions. He says, in effect, that he is afraid that if this dam is constructed his lands will be injured by percolation of water through the banks of the stream, and that his lands will be overflowed by freshets, and that his family will be made sick by the rising of the water in the river. But the expression of these fears is no statement of facts; and a court will not enjoin a useful structure, necessary to the business interests of the community, upon the mere ground that somebody is afraid that injury will result from such structure: *Wolcott* v. *Melick*, 11 N. J. Eq. 204, 46 Am. Dec. 790; *Duncan* v. *Hayes*, 22 N. J. Eq. 27; *Thibault* v. *Conover*, 11 Fla. 143; *St. James's Church* v. *Arrington*, 36 Ala. 546; *Rhodes* v. *Dunbar*, 57 Pa. St. 274, 98 Am. Dec. 221; *Sheboygan* v. *R. R. Co.* 21 Wis. 678.

Opinion by Mr. Justice Moore.

1. Plaintiff's first contention is that Big Pudding River is a public navigable stream; that the erection of a dam across it creates a nuisance to prevent which he is entitled to the interposition of a court of equity. A court of equity will restrain a nuisance when it appears that the complainant will sustain irreparable injury, or be compelled to resort to a multiplicity of actions to recover damages for a continued existence thereof: *Bassett* v. *Salisbury Mfg. Co.* 43 N. H. 249. To entitle the plaintiff, however, to such relief, he must allege and show that he has sustained a special or personal injury. "A court of

equity," says LORD, C. J., "ought not to interfere to prevent a public nuisance, or to abate one already existing, at the instance of a private party, unless he shows a special injury distinct from the public, actually sustained, or justly apprehended. The obstruction of a public highway is, without doubt, a public nuisance; but this of itself is not sufficient to justify the interposition of equity in behalf of the plaintiff, unless he sustains some private, direct, and material damage beyond the public at large": *Luhrs* v. *Sturtevant,* 10 Or. 170. Plaintiff has not alleged that the obstruction of the navigation of the river has caused, or will cause, him any special or personal injury, and hence he is not entitled to any relief on that ground.

2.   Will the plaintiff sustain damage from backwater either by overflow or percolation? In *Fletcher* v. *Rylands,* L. R. 3 H. L. 330, Mr. Justice BLACKBURN, in the court of Exchequer Chamber, thus illustrates a rule applicable in this case: "If a person brings, or accumulates, on his land anything which, if it should escape, may cause damage to his neighbor, he does so at his peril." This principle, thus established, has since been applied to injuries resulting to adjoining land from the percolation of an artificial reservoir: Gould, Waters, § 296. If a dam be erected across a stream, and the water raised above the natural flow, it forms a reservoir which necessarily creates an artificial pressure: *Wilson* v. *New Bedford,* 108 Mass. 261, 11 Am. Rep. 352; and if the effect be to force the water through the earth from the reservoir to the neighboring lands, causing them to produce poorer crops, damages can be recovered for such injury: *Mason Mfg. Co.* v. *Fuller,* 15 Pick. 554; and, if damages be occasioned by raising a pond so as to injuriously affect neighboring lands, no distinction is made whether it be by overflowing or by percolation: *Fuller* v. *Chickopee Mfg. Co.* 16

Gray, 46; *Pixley* v. *Clark*, 35 N. Y. 520, 91 Am. Dec. 72. The rule deducible from these authorities may be briefly stated as follows: If a person, by artificial means, raises a volume of water above its natural level, and, by percolation, or by overflow, injures neighboring lands without license, prescription, or grant from the proprietor, the latter may invoke the interposition of a court of equity, and obtain an injunction to prevent it, when he would sustain irreparable injury, or be compelled to bring a mutiplicity of actions to recover the damages as they accrued. It is not claimed that the proposed dam will, if erected, cause the water to overflow the banks of the river at ordinary stages, but that in times of freshet this danger is to be apprehended. The evidence is conclusive that it is only during freshets that the water of the river will overflow the banks. These freshets usually occur in the winter, about once in three years, when quite a portion of plaintiff's land is submerged, and this has happened each freshet since the dam was carried out. To entitle plaintiff to relief, he must show that, in consequence of the existence of the dam, lands of his would be submerged, which, without it, would not be. The evidence fails to establish this fact, and since the lands have been overflowed by freshets in the absence of the dam, it cannot be inferred that the damage from overflow would be augmented by its existence, and thus his injury, if any, must be due to percolation.

The plaintiff and his witnesses testify that the soil adjacent to the river is a sandy loam, while the defendant and an equal number of witnesses testify that it is a hard clay, except in a few places where an eddy of the river has deposited some sand. No direct evidence was offered that tended to prove that the water percolated through the soil, but this is sought to be established by proving that since the dam was carried out, a low place

about three fourths of a mile below its site, and but a few hundred yards from the river, had been cultivated which before that time was wet, and covered with brush, and from this it is claimed, by inference, that the fact has been established. The evidence shows that since the Willamette Valley was first settled many places that were then low and wet have since become dry and arable. Careful surveys of plaintiff's land were made by competent engineers, levels were run, and maps showing the topography thereof were offered in evidence by each party, from which it appears that there are ponds upon it which it was claimed were filled by percolation from the river. These surveys show that the water in each was much higher than the level of the river at the time they were made, and the inference must be drawn that they were filled by an overflow from the river, or from surface drainage, and not by percolation, as claimed by plaintiff.

3. It is contended that by erecting the dam the water will become foul, stagnant, and unhealthy, thereby impregnating the atmosphere with malaria, which will render the plaintiff and his family liable to sickness. When a dam causes an artificial head of water to become stagnant, and so corrupts the atmosphere as to impair the health of the neighborhood, it thereby becomes a nuisance, and is ground for relief in equity by injunction on the part of those suffering special injury therefrom. But to entitle a person to such relief the nuisance must actually exist, and not be merely apprehended: Gould, Waters, § 212. "A probability," says ROBERTSON, C. J., "that a thing may become a nuisance, or, in other words, an actual and substantial annoyance, public or private, does not make a nuisance which can be lawfully abated: *Gates* v. *Blincoe*, 2 Dans. 158, 26 Am. Dec. 440; and therefore, Lord HARDWICKE, in an anonymous case in 3

Atkyns, said that 'the fears of mankind, though they may be reasonable, will not create a nuisance.'" The evidence shows that plaintiff and his family were, before the dam went out, subject to attacks of malaria, but that since that time they have been quite free from its effects. It also shows that the earlier settlers on the higher land, as well as along the banks of Big Pudding River, were more or less subject to malarial attacks, but that, by the cultivation of the soil, or from natural causes, the health of the neighborhood has much improved, and the effect of malaria is now rarely felt. The plaintiff attributes these former attacks of malaria to the existence of the dam, but of this he cannot be certain since Poison Lake, which was then and now is a stagnant pool from which miasmatic poisons probably emanated, may have been the direct cause. The evidence fails to show that the erection of the dam would cause such injury to the health of the plaintiff or his family as he apprehends. Our statute, sections 3788–3826, Hill's Code, recognizes the necessity of mills for all manufacturing purposes, and has provided ample means for acquiring the right to erect dams and backwater to operate them, and a court of equity should hesitate before it ruthlessly destroyed a property of such value, unless the proof was clear and convincing that the backwater thus raised was detrimental to the health of the neighborhood. The decree of the court below is affirmed.        Affirmed.