Price J.
This cause was heard and decided in the court below upon the following agreed statement of facts:
“The plaintiff, the St. Marys’ Woolen Manufacturing company, is a corporation, and the defendant, the Bradford Glycerine company, is a partnership, organized for doing business in the state of Ohio. The plaintiff, at the time of the injury, owned real estate in the village of St. Marys’, whereon buildings are erected, which buildings were there at the date of the explosion, on the 25th da-y of January 1896.
“At that time, the defendant was the owner of a magazine and contents containing about fifty quarts of nitro-glycerine, used by the defendant in its business of manufacturing, storing and vending nitro-glycerine, which magazine was situated on a tract of land belonging to one W. G. Kishler, and situated something over a mile west of the buildings so owned by the plaintiff in St. Marys’, Ohio, and situate about one-fourth of a mile distant from the corporation line of the' village of St. Marys’, Auglaize Co., Ohio.
“That on or about the said 25th day of January 1896, while one of the defendant’s servants was upon the premises upon which said magazine was located, engaged in transferring about 750 quarts of.nitro-glycerine from a wagon loaded with same to said magazine, the said nitro-glycerine stored *523 therein, and also the same upon the wagon aforesaid, from some cause unknown to said defendant, exploded with great force and concussion, causing vibrations in the atmosphere sufficient in power and violence, to break, shatter and destroy three plate glass and three common glass in the buildings owned by plaintiff as aforesaid, of the value of $240.10 — ’by reason of which explosion and the breakage of said glass, the plaintiff has injured and damaged to the extent aforesaid.
“That nitro-glycerine is a dangerous substance,and likely to explode. That demand of payment of said sum has been made by the plaintiff to (of) the defendant, and payment thereof has been refused.”
A jury was waived, and the cause submitted to the court. The court found for the defendant, the Bradford Glycerine Go., and rendered judgment accordingly.
Upon the facts above stated and agreed upon by the parties, is the judgment of the lower court according to the law of the case? This is the question we are called upon to answer.
It must be observed that there is no complaint of negligence on the part of the defendant, or any of its servants, in the construction of the magazine, or in handling, storing or guarding the nitro-glycerine, except that character of negligence which the law imputes to one, who places and keeps upon his premises for storage and sale such substances as are in themselves “dangerous” and “likely to explode” and injure the person or property of another. One of the facts agreed upon is, that “nitro-glycerine is a dangerous substance, and likely to explode”. At the time of the explosion, there were fifty quarts of this substance stored in the magazine, and a servant of defendant was transferring seven hundred and fifty quarts of the same material from a wagon to the magazine, when for some unknown reason, all exploded. The facts further inform us that the explosion was “ with great force and concussion, *524 .causing vibrations in the atmosphere sufficient in power and violence to break, shatter and destroy three plate glass and three common glass owned by the plaintiff”, etc. And this, too, at a distance of a mile or more from the magazine.
The question of defendant’s liability thus presented has been the source of much comment by elementary writers, as •well as controversy in the courts of this and other countries for many years,
■■ Some courts and authors adopt the .rule that one who •places and keeps upon his own premises, anything in itself dangerous and liable to explode or escape from such premises, and it does explode ar escape to. the premises of ‘another, the first party is liable in damages for the injury.
There is another line of authorities which regard such ,a doctrine as an abridgement of that dominion and free use 'ánd enjoyment which one is entitled to have and exercise over his own property.
The former position has been held with much uniformity in England — more so than in this country, and the case of Fletcher v. Rylands, (L. R.) 1 Exch. 265, seems to be the one around which most of the English, and very many of the American cases have been arrayed.
In that cáse the defendants had constructed a reservoir on their premises, and filled it with water. The water flowed by an underground communication, of which defendants were ignorant, into plaintiff’s mine. They were held liable without proof of negligence. The case was appealed to the House of Lords, where Lord Oran worth said:
“In considering whether a defendant is liable for damages which the plaintiff may have sustained, the question, in general, is not whether defendant has acted with due care, but whether his acts have occasioned the damage. For where one person, in managing his own affairs, causes, ..however innocently, damage to another, it is obviously only just that he should be the.party to suffer.”- * * *
*525 : We will not take the time and space to note or discuss all or very many of the decided cases, but will refer to a few of our own country, which contain a careful review of the whole subject.
To this class belongs the case of Cahill v. Eastman 18 Minnesota, 324, (or 10 Am. Rep., 184.)
The first paragraph of the" syllabus reads:
■ ..“A person who so uses his property in such manner as necessarily tends to injure the property of another, is liable to that other, for any injury which may result from such use, without regard to considerations of care or skill therein,”
In the opinion of the court, on page 190, is the following language:
“What is called the natural right of support from neighboring soil is also am illustration of this. The distance intervening between an excavation and the place where the inpry is caused, is not material, so long as the excavation is clearly proved to have been the cause of the injury. Nor is the defendant excused because he was making a lawful or even an ordinary and usual use of his land, what has been called a natural use of it.”
In same case, the Minnesota court approves of the language of Justice Blackburn, in Williams v. Groucott, 4 B. & S., 195.
“Looking to the general rule of law that a man is’bound so to use his own property as not to injure his neighbor’s,it seems to me that where a party alters things from their normal condition so as to render them dangerous to already acquired rights, the law casts upon him the obligation of fencing the danger, in order that it shall not be injurious to those rights.”
We commend the Minnesota case quoted from, for a thorough discussion of the English and American authorities on the subject before us.
The same view of the law is taken by the Supreme Judicial *526 court of Massachusetts, in Wilson v. City of Bedford, 108 Mass., 261, (or 11 Am. Rep. 352.) The court reviews several leading cases, and quotes approvingly the language of Lord Cranworth, in Rylands v. Fletcher, supra, when he said:
“If a person brings or accumulates on his land anything, which, if it should escape, may cause damage to his neighbor, he does so at his peril. If it does escape, and cause damage, he is responsible, however careful he may have been,and whatever precautions he may have taken to prevent damage.”
The case of Hegg v. Licht, 80 N. Y., 579, lays down this rule:
“The keeping of gun-powder upon private premises, may be a nuisance, when in case of explosion, it would be liable to injure persons or property of those residing in the neighborhood, although it should be carefully stored or kept, ”
In the opinion the Court say:
“The defendant had erected a building and stored materials therein, which from their character, were liable to, and actually did explode causing injury to the plaintiff.
“The fact that the explosion took place, tends to establish that the magazine was dangerous and liable to cause damage to the property of peisons residing in the vicinity.”
We have quoted sufficiently from cases decided in other jurisdictions. Our own supreme court has had occasion to pass upon the principle we have been considering in the Defiance Water Co. v. Olinger, 54 Ohio St., 532. Without restating the nature of the case, we are content to say, that in support of the doctrine stated in the first branch of the syllabus, the court,on p. 538, say:
“In England it seems to be settled by Fletcher v. Rylands, 1 Law Report Excheq., that the duty rests upon one who collects and stores upon his premises inanimate substances, or animate things from the escape of which injury is likely to follow, to prevent such escape.
*527 “While this duty may not extend to trespassers, or those who, for their own purposes, without express or implied invitation from the proprietor, chose to come upon the premises, yet that case (Fletcher v. Rylands) should be regarded as extending this duty to all persons who may be rightfully on adjoining premises. Blackburn, J. in the course of an able opinion,and speaking for the whole court, used the following language: ‘We think the true rule of law is, that the person who, for his own purposes, brings on his land and collects and keeps there, anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape. He can excuse himself by showing that the escape was owing to the plaintiff’s default; or perhaps, that the escape was the consequence of a vis major, or the act of God.’’ ’ # * # #t
On p. 540, our Supreme Court approves the doctrine stated in this language: “This doctrine would seem to be in exact accord with justice and sound reason.” * * *.
It will be observed that, in speaking of the subject of the injury, some of the authorities cited, use the expression— “adjoining premises;” others, “persons or property in the neighborhood,” or “vicinity. ”
In the case at bar, the injured property was situate about one mile from the magazine, and the question may be properly asked: is property so far off, in the “vicinity” or “neighborhood;” or are premises at that distance, “adjoining premises,” within the meaning of those terms in a legal sense ?
We think that where property is injured directly and without any intervening cause, by the force of an explosion, it is legally within the “neighborhood” or “vicinity” of the scene of the explosion; and the place where the injured property was situated sustained,the relation to the owner of the magazine of neighboring property, or premises within the vicinity. And “adjoining premises” — in contempla *528 tion of law,may be defined in the same way. The premises really adjoining the location of the magazine, may be large or small in extent. They may consist of lands a mile square belonging to the same owner. Such lands as to every acre might be called “adjoining premises. ’5 On the other hand, the next adjoining premises might be an ordinary town lot, where no injury is done, while property on lots more remote,' might be swept away or destroyed by the violence of the explosion. Hence, neighboring or adjoining premises and “premises within the vicinity,’’are such as are directly affected by and within the natural range of the powerful concussion or shock.
Goelce & Culleton, for Plaintiff in Error.
Geo. H. Phelps, for Defendant in Error.
‘ Again, it may be suggested that the defendant is not liable,- because, when it built the magazine and stored the' glycerine, it could not reasonably anticipate or contemplate,' that in case explosion should occur, it would injure or destroy property so far away. What ought to be anticipated or contemplated by one who handles and stores such dangerous substances, depends on their character, and what use and experience have shown to be their capacity for destruction. Nitro-glycerine is, perhaps, the most deadly explosive known to and used by man, and it is not restrained by immediate objects or boundary lines.
The facts of this case,show that this “substance is dangerous and likely to explode’’; that it “exploded with great force and concussion, causing vibrations in the atmosphere' sufficient in power and violence, to break, shatter and destroy * * * glass in the buildings owned by plaintiff” %
We think the defendant should respond in damages, and that the court below was wrong in finding in its favor.
The judgment is reversed, and findings set aside; and rendering the proper judgment,we find for the plaintiff,and enter judgment accordingly.