CAROLINE W. BENSON & another *vs.* GREAT BARRINGTON
FIRE DISTRICT.

Berkshire.    January 8, 1903. — June 19, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Waterworks.*

One whose land acquired in 1894 is injured by the action of a dam erected under St. 1886, c. 311, incorporating the Berkshire Heights Water Company of Great Barrington, amended by St. 1887, c. 381, § 1, and 1890, c. 429, § 2, has a remedy for damages only under § 6 of St. 1886, c. 311, and cannot maintain an action of tort against a fire district which acquired all the rights of the water company in 1892 under § 10 of the same statute.

TORT for injuries alleged to have been caused to land of the plaintiffs at Great Barrington by illegal acts of the defendant in setting back upon it the waters of the Seekonk River and of the Green River and other waters, making it a bog, swamp and marsh.   Writ dated September 27, 1899.

The answer alleged authority for the acts of the defendant under St. 1886, c. 311, it having acquired under § 10 of that act the rights of the Berkshire Heights Water Company to erect and maintain a dam across Green River, and further alleged that if the plaintiffs had any claim for damages caused by the damming of the waters of the rivers named such damages could not be recovered in an action of tort against the defendant.

In the Superior Court the case was tried before *Hopkins*, J., who at the close of the evidence ordered a verdict for the defendant.   The plaintiffs alleged exceptions, which after the death of *Hopkins*, J., were allowed by *Maynard*, J.

*H. M. Whiting*, for the plaintiffs.

*H. C. Joyner*, for the defendant.

BARKER, J.   The Berkshire Heights Water Company was created by St. 1886, c. 311, for the purpose of furnishing inhabitants of the village of Great Barrington with water.   For this purpose it was authorized to take not more than ten per cent of the waters of Green River and to take the waters of the tributaries of that river with any water rights connected therewith and also to take or to purchase and hold any real estate, rights of way or easements necessary for laying, constructing and maintaining aqueducts, reservoirs, storage basins, dams and such other works as might be deemed necessary or proper for collecting, purifying, storing, discharging, conducting and distributing said waters to said inhabitants, and to erect on the land taken or held proper dams, and to provide the means and appliances necessary for the establishment and maintenance of complete and effective waterworks.   St. 1886, c. 311, §§ 1, 2, 4. By § 6 of the same act it was made liable to pay all damages sustained by any person in his property by the taking of any land, water or water rights or by constructing any aqueduct or other works for the purposes specified in the statute, to be determined and recovered in the manner then provided by law in case of land taken for highways.

It is not disputed that in the year 1887 the corporation built a dam across the Green River below the plaintiffs land, and established and put in operation a system of waterworks, nor that in the year 1892 the defendant succeeded to all the property and rights of the corporation and has since that time maintained the dam and operated the works. It is agreed that the defendant never has raised the dam or the water in the pond higher than the same were raised and maintained by the corporation, and that the water in the pond overflows no more or other land than when the dam was built in 1887.

By § 3 of the statute the corporation was required to file and cause to be recorded within sixty days after any taking otherwise than by purchase of the waters of the river or any water rights or water sources, or any real estate, rights of way or easements a description thereof with a statement of the purpose for which the same was taken. Five certificates of taking were filed and caused to be recorded by the corporation. The first was made on October 2, 1886, of a strip of land six feet wide for an aqueduct. The second was made on October 4, 1886, of a strip of land seven feet wide for an aqueduct and also of a parcel of land containing one half of an acre for a pumping station. The third was made on October 5, 1886, and was of a strip of land eight feet wide and one hundred and fifty feet long, across the Green River, for the purpose of constructing and maintaining a dam across the river in order to convey its waters to Berkshire Heights and into and through the village of Great Barrington as authorized by the act. The fourth was made on September 1, 1887, of a strip of land connecting the pond and the pumping station for the purpose of building and maintaining a trunk line to conduct the water of the river to the station. The fifth was made on November 1, 1887, after the dam across Green River had been constructed, and was of two tracts of land together nearly fourteen acres in area for the purpose of erecting and maintaining thereon a dam and storage basin in which to collect the waters of the river and from which to take them to be used both as a power to distribute the same and also to distribute the same to the inhabitants of the village, and the land taken is further described as " the whole amount of the land that is flowed when the water

in the pond is two feet higher than the top of the dam as now constructed."

By St. 1886, c. 311, § 2, the corporation was forbidden to " take, divert or convert to its own use, more than ten per cent of the waters of " Green River.   By an amendatory act passed June 8, 1887, before the date of the fourth and fifth certificates of taking, the corporation was allowed to take the whole or any part of the waters of the river for the purpose of using the same as a power with which to pump the waters of the river and distribute the same to the inhabitants.   St. 1887, c. 381, § 1.

In the year 1890 it was provided by another amendatory act that all the doings of the corporation " in relation to the taking of land and of water rights and privileges for its corporate purposes" should be by that act ratified and confirmed.   St. 1890, c. 429, § 2.

It is agreed that from the year 1894 the plaintiffs have been the owners of a farm on a stream called the Seekonk which empties into the Green River at the head of the pond raised by the waterworks dam.   A parcel of this farm, about eleven acres in extent, is on the Seekonk about eleven hundred feet above the head of the waterworks pond.   This parcel is the land described in the plaintiffs' declaration, which alleges that the defendant forcibly broke and entered the parcel and set back the waters of the Seekonk and the Green River and other waters under, upon, over and into the parcel and made a bog and swamp and marsh of the same, etc.

The evidence tended to show that before the building of the waterworks dam the parcel described had been a meadow producing from one and one half to two tons to the acre yearly of excellent hay, almost all of which could be mown with a machine, and that the soil was firm, and the ground kept fertile by the usual spring freshets the waters of which speedily retired after covering the surface of the meadow with fertilizing material.   That at present most of the meadow has run out of good grasses, that its soil has become soft and swampy and wet; that a cove which was there has increased greatly in size, and that the bed of the Seekonk formerly some feet below the surface of the meadow has risen above it so that the water of the stream before entering the defendant's pond is turned upon the meadow.

Also that the ditches and spring brooks in the meadow are obstructed and the crops of grass so affected as to have made it necessary to change the use of the land into pasturage.

There seems to have been no real contention between the parties that the meadow had not since the building of the water-works undergone a change for the worse like that claimed by the plaintiffs, but on the part of the defendant it was contended that this change was not due to the Green River dam but to obstructions in and to the natural filling up of the channel of the Seekonk above the waterworks dam. As affecting this question it is to be noted that there was no contention that the direct effect of the dam was to overflow any part of the surface of the plaintiffs' land. The level of the water in the pond when even with the top of the dam was testified by the plaintiffs' engineer to be 2.78 feet and by the defendant's engineer to be 3.37 feet below the lowest part of the plaintiffs' land.

The judge before whom the case was tried died before the bill of exceptions was allowed and the bill does not state on what ground the verdict for the defendant was ordered. While as a matter of physics it seems to be certain that the velocity of water at a given point in a stream is governed solely by the nature of the channel at and above that point, we are not prepared to hold as matter of law that changes such as the evidence tended to show had occurred in the nature of the plaintiffs' meadow since the building of the waterworks dam could not to some extent at least be in some way due to the operation of that dam. See *Wilson* v. *New Bedford,* 108 Mass. 261; *Monson, & Brimfield Manuf. Co.* v. *Fuller,* 15 Pick. 554; *Fuller* v. *Chicopee Manuf. Co.* 16 Gray, 46. Without intimating any opinion upon that question we think that if the deterioration of the meadow was due to the dam and the pond of water raised by it, the damage to the meadow was a damage sustained by the owner in his property by the construction of the waterworks, and therefore was recoverable only under the provisions of St. 1886, c. 311, § 6, in the manner provided by law in case of land taken for highways, and not in an action like the present suit. See *Wilson* v. *New Bedford, ubi supra.*

The plaintiffs contend that as none of the certificates of taking states that the corporation has taken any of the waters of Green

River or of its tributaries or any water rights or water sources or any land of the plaintiffs there can be no justification under the takings. Looking at the five certificates alone, in connection with the purposes of the original statute it would be a very narrow view of them to hold that this construction was correct. When we consider the provisions of St. 1890, c. 429, § 2, enacted long after the corporation had taken the land covered by its dam and pond, not only for the purpose of distributing the waters of Green River to the inhabitants of the village but of power to be used to distribute that water supply, for which latter purpose it was authorized by St. 1887, c. 381, § 1, to take all the waters of the river, we think that the statutory ratification of " all the doings of said corporation in relation to the taking of land and of water rights and privileges for its corporate purposes " gave the corporation a full and unquestionable right to maintain its dam subject only to such damages as might be recoverable under St. 1886, c. 311, § 6. As this right since the year 1892 has been in the defendant it is not liable in the present action, even if the effect of the dam since the plaintiffs acquired title to the meadow in 1894 has been to injure the meadow.

In this view the evidence excluded under exception would have been immaterial. In no instance does the bill of exceptions state what would have been the testimony in answer to the questions excluded. Besides this the exceptions to the exclusion of evidence have not been argued by the plaintiffs.

*Exceptions overruled.*