Argued February 6, decided February 13, 1912.

## LINN COUNTY v. CALAPOOIA LUMBER CO.

[121 Pac. 4.]

HIGHWAYS—OBSTRUCTION—REMOVAL.

1. Injunction to compel the removal of an obstruction to a highway may be maintained by a county or municipality only upon showing a danger of great and irreparable injury, and, when the injury complained of is not a nuisance *per se* and may not become so, an injunction will not be issued until the matter has been tried at law, and hence injunction will not be issued to compel the removal of a dam which may cause slight overflows upon a highway, where it appears that at most it would not be necessary to entirely remove the dam.

INJUNCTION—RIGHT TO—POLICY.

2. It is against the policy of a court of equity to issue an injunction which must necessarily destroy property.

HIGHWAYS—OBSTRUCTION—INJUNCTION—EVIDENCE.

3. In a suit by a county for an injunction to compel the removal of a dam alleged to cause water to flow on a highway, evidence *held* to sustain findings that the overflow was not so serious as to interfere with public travel.

From Linn: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE BEAN.

The county of Linn is a municipal coporation, and the Calapooia Lumber Company a private corporation, organized under the laws of the State of Oregon. The

Calapooia River in Linn County, is a mountain stream running in a westerly direction upon which the defendant has a lumber mill. A dam is constructed across this river for the purpose of impounding water to generate power for manufacturing lumber, and also to provide a suitable place for booming logs. It is alleged by plaintiff that this dam obstructs the flow of the water in the river to such an extent as to inundate and tear out the grade of a portion of the county road; that, by reason of this overflow, large quantities of sawlogs and debris are deposited in said road, making the same impassable and dangerous to the public for long periods of time, and causing the plaintiff to expend large sums of money in repairing the highway. It is also alleged that defendant has maintained the dam since 1903, and, unless restrained, will continue to maintain the same to the irreparable injury of the public. The answer denies the gist of the allegations of the complaint, and avers that for several years the defendant has been the owner of the sawmill and planing mill, situated on the premises of defendant, and has been engaged in operating the same in the manufacture of lumber, using the water of the river for such purpose. According to the evidence, the road which runs along the north bank of the Calapooia River west of Crawfordsville, in Linn County, has been used as a public highway for about 20 years. The dam is described as being 150 feet in length and about 14 feet in height, with five gates 9x10 feet, and an additional gate at the head of the flume, 6 feet in width. A mountain rises along the south side of the river at an angle of about 45 degrees, and on the opposite bank the land is low in places. The grade of the road is estimated to be 3 feet above the top of the dam, except in one place near a small bridge where the road is lower. During a freshet, a rise of water of from 3 to 4 feet will cause the river to overflow the road. These freshets

have occurred three times since the dam was constructed in 1903, and at such periods the water in the river rises rapidly, and when at its height recedes quickly. Near where the county road crosses the small bridge west of Crawfordsville, there is a depression in the grade where the water overflows to a depth of about 3 feet for a distance of 100 yards, and to a depth of about 1 foot for 25 chains down the road. This has interfered with public travel for seven or eight hours at each period of high water, making a total of one day's time when the public was so inconvenienced. In order to obviate this, the defendant has raised the small bridge and the grade of the road for a part of the distance from the bridge to the mill, and has constructed a levee from the road to the river. The company has also partially excavated a channel or spillway around the dam for the purpose of carrying off the surplus water. From 1,500,000 to 3,500,000 feet of sawlogs are held in the company's boom, and during one of the freshets two or three of these logs were washed over the road, and one lodged thereon. Usually at times of high water the gates of the dam are kept open. It is also in evidence that the water once overflowed the highway before the dam was constructed, but in a less amount. Some of the witnesses testify that the proposed spillway will relieve the overflow of the stream.        AFFIRMED.

For appellant there was a brief over the names of *Mr. John H. McNary,* and *Mr. Gale S. Hill,* with an oral argument by *Mr. Hill.*

For respondent there was a brief over the names of *Messrs. Hewitt & Sox,* with an oral argument by *Mr. Henry H. Hewitt.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. A suit for an injunction to compel the removal of an obstruction to a highway may be maintained by a

county or municipality only upon showing danger of great
and irreparable injury. 37 Cyc. 253. When the injury com-
plained of is not, *per se,* a nuisance, but may or may not
become so, according to the circumstances, and when it
is uncertain, indefinite, or contingent, or productive of
only possible injury, equity will not interfere until the
matter has been tried at law.    The relief will not be
allowed in the absence of clear and  conclusive  proof
that the injury is permanent and irreparable, nor where
the acts complained of are only temporary.    1 High,
Injunctions, § 742, and note; 4 Pomeroy, Equity Juris.
(3 ed.) § 1349.   A court of equity has power to restrain
and abate a public nuisance, when the right has been
established by law, or is conceded, and the questions of
fact are not in dispute.    *Van Buskirk* v. *Bond,* 52 Or.
234   (96 Pac. 1103).

The obstruction complained of was temporary,  and
the public travel was impeded for only a short time.
On one of these occasions, it appears that the rise of
the water was caused by a jam of sawlogs congesting
in the river above defendant's dam.   As to whether or
not this inconvenience will occur in the future depends
entirely upon the amount of rainfall and other natural
conditions varying with the change of the seasons, the
operation of the gates, and the change in the drainage
outlets.    Taking all these things into consideration, the
danger to the county road is problematical, uncertain,
and conjectural.   It is not shown how much the number
of logs in the river would have to be lessened, in order
to relieve the congestion of the logs; nor is it clearly
shown how much the dam would have to be lowered to
aviod the backwater.   Apparently the plaintiff is asking
to abate a dam about 14 feet in height so as to take care
of an overflow of water of about one foot in depth.  From
the evidence this would appear to be about the amount
of the overflow, in view of the fact that the depth of

the water flowing over the dam during a flood is four feet, and the grade of the road is three feet above the top of the dam. It does not therefore appear necessary to abate the entire dam and destroy the usefulness of this manufacturing establishment. A practical spillway, or the keeping open of additional gates in the dam when freshets occur, together with the raising of the grade across the gulch near the small bridge will apparently relieve the situation without destroying the dam or rendering the mills useless.

2. It is not the policy of the law or the province of a court of equity to unnecessarily destroy property, and there is manifestly great fitness in pausing much before we unnecessarily interrupt persons in the use and enjoyment of their property. *Esson* v. *Wattier*, 25 Or. 7 (34 Pac. 756). Only the future can determine whether or not the inconvenience complained of will recur. It appears that the county court, whose duty it was to look after matters pertaining to county roads, practically agreed with defendant in regard to the manner of relieving the situation in caring for the surplus water by means of a canal or spillway and by raising the grade of the road across the low depression near the small bridge.

3. The trial court heard the testimony of the witnesses, and in substance found that the road in question had been flooded for only a brief period of time and that the public travel thereon had not been materially interfered with. We think that the findings were warranted by the evidence.

The decree of the lower court is therefore affirmed.

AFFIRMED.