Donahue, J.
The question in this case is raised by the demurrer to the amended petition, and it is one that materially affects property rights in this state. Plaintiff in her amended petition avers that' the defendants in the process of constructing a tunnel through and under Humbert Avenue, for supplying water to the city of Cincinnati, loosened and removed earth and. rock by means of high-power explosives; that plaintiff was the owner of a frame dwelling house, with stone and brick foundation and stone and brick chimneys, occupied, by her and her family as a home; that this tunnel, was being constructed through and under the street adjacent to this dwelling house; that defendants trespassed upon and under and broke into plaintiff’s land and dwelling house with force and violence by means of explosions of great *149 power and frequency and in close proximity to plaintiff’s dwelling house, and thereby produced concussions and vibrations of the earth and air, destroying the cistern on her lot, the foundation of her building, breaking the glass in the windows, cracking and destroying the chimneys, and thereby rendered her house unsafe and unfit for habitation and depriving plaintiff of its use, enjoyment and occupation.
A demurrer to this amended petition was sustained by the trial court for the reason that it contained no averments of negligence or want of skill in the handling of these explosives. The amended petition charges a trespass upon plaintiff’s land by the transmission of force through the soil and subsurface and concussion of air produced by the explosion of blasts used in loosening rock and earth in the construction of the tunnel in the street in front of plaintiff’s premises.
The question presented is whether the owner of property may make use of high explosives on his own premises in the accomplishment of a lawful purpose, provided he uses due care, notwithstanding the necessary, natural or probable result thereof is to injure or destroy adjacent property. The supreme court of California, in the ease of Colton v. Onderdonk, 69 Cal., 155, has spoken in no uncertain terms upon this question. In the fourth proposition of the syllabus it is held that “Where the owner of a lot situated in a large city, and contiguous to the dwelling house of another, uses gunpowder to blast out rocks on his lot, he is liable for the damages proximately and naturally result *150 ing to the house of the adjoining owner from the act of blasting, whether the damage was caused by rocks thrown against the house or by a concussion of the air around it.” The court, on page 159, uses this language: “The defendant seems by his contention to claim that he had a right to blast rocks with gunpowder on his own lot in San Francisco, even if he had shaken Mrs. Colton’s house'to ruins, provided he used care and skill in so doing, and although he ought to have known that by such act, which was intrinsically dangerous, the damage would be a necessary, probable, or natural consequence. But in this he is mistaken.”
In the case of Cahill v. Eastman, 18 Minn., 324, it was held: “Where it is sought to make one accountable for the consequences of acts done by him upon his own land, the question, in general, is not whether he exercised due care, but whether his acts caused the damage. If they necessarily tend to injure his neighbor in his pre-existing rights of property, he is liable in damages for the natural and necessary consequences thereof, irrespective of any consideration as to the care and skill with which such operations may have been conducted.” To the same effect is the case of Shipley v. Fifty Associates, 106 Mass., 194; Ball v. Nye, 99 Mass. 582; Wilson v. City of New Bedford, 108 Mass., 261; City of Joliet v. Harwood, 86 Ill., 110.
The New York court of appeals held, in the case of Hay v. Cohoes Co., 2 N. Y., 159, that defendant was liable for- injury caused from blasting on its own premises, although no negligence or want of skill in executing the work was alleged or *151 proven. The same principle in relation to the storing of water is announced in the case of Pixley v. Clark, 35 N. Y., 520. Also in reference to the storage of gunpowder and other explosive materials, in the case of Heeg v. Licht, 80 N. Y., 579. In the case of McKeon v. See, 51 N. Y., 300, an injunction was granted against defendant from operation of machinery by steam power which produced jarring and shaking of plaintiff’s building. In the case of Sutton v. Clarke, decided in England in 1815, 6 Taunton, 29, it was stated in the opinion by Sir Vicary Gibbs, C. J., that where a person improves his own land for his own benefit, according to his best skill and diligence and not foreseeing that his act will produce injury, yet if he unwittingly injures his neighor he is answerable. This was the settled law of England at tha.t time, and many authorities are cited by the court. That doctrine has been modified, at least in this country, to the extent that where the injury was not the natural, necessary or probable consequence of the act of plaintiff, and could not have been foreseen, no recovery can be had unless there be an actual or constructive trespass of negligence in doing the work. In the case of Booth v. The Rome, W. & O. T. Rd. Co., 140 N. Y., 267, the court of appeals seems to have departed from the doctrine announced in the case of Hay v. Cohoes Co., supra. However, the court distinguishes these cases. In the latter the court held that defendant was not liable for the injury caused by blasting notwithstanding that during the progress of the work it was informed of the *152 injury that was being done. This decision was largely predicated upon the particular facts m that case. The rocky surface of the upper part of Manhattan Island made blasting necessary in the work of excavating, and unless permitted the value of the lots, especially for business purposes, would be seriously affected. However, the fair and legitimate interpretation and application of the doctrine announced in that case, as elaborated and explained in the opinion at page 278, would permit the second proprietor to destroy the building of the first, and the third to destroy the building of the second, and in like manner each succeeding proprietor might destroy the building of his predecessor until the territory was exhausted, and then there would remain upon this territory but one building, the last one, fit and safe for use and occupancy, unless the several owners followed in the trail of devastation and repaired or restored their buildings. There are, of course, two very important considerations to be kept in mind in the disposition of a question of this character. First, to give to the owner the largest liberty possible, in the use, occupation and improvement of his own property, consistent with the rights of others, and the right to employ modern methods and machinery in accomplishing the improvements desired. Second, that one may not use his own property to the injury of any legal right of another. This maxim of the common law, Sic utere tuo ut alienum non laedas, is so well established and so universally recognized that it needs neither argument nor citation of authority in its support. But *153 it must be conceded that this is no longer the law if the owner of a lot may employ such means in the improvement of his property as will naturally and necessarily result in the destruction of adjoining property. Particularly would this be true if, as in the case of Booth v. The Rome, W. & O. T. Rd. Co., supra, he is informed that the means and methods that he is employing are in fact destroying his neighbor’s property, and notwithstanding that knowledge he may continue in the use of these methods and these means without liability therefor, unless perchance he is guilty of negligence or want of skill in the handling of the explosives used. If the means employed will, in the very nature of things, injure and destroy his neighbor’s property, notwithstanding the highest possible care is used in the handling of the destructive agency, the result to the adjoining property is just as disastrous as if negligence had intervened. If one may knowingly destroy his neighbor’s property in the improvement of his own, it is little consolation to the neighbor to know that his property was destroyed with due care and in a scientific manner. If the consequences of the act could not be foreseen, if the means employed by a person in the improvement of his own property would not naturally, necessarily or probably cause the destruction of adjoining property, then the question of negligence in doing the work would become important, but when he makes use of such means as will naturally, necessarily or probably result in the destruction of property, a different rule must obtain, otherwise the maxim of the law above stated, *154 so well established and so universally recognized, must be abandoned forever.
The doctrine announced in the case of Booth v. Rome, W. & O. T. Rd. Co., supra, was reaffirmed by the court of appeals in the case of Benner v. Atlantic Dredging Co., 134 N. Y., 156, and Holland House Co. v. Baird, 169 N. Y., 136. In the later case the court stated in its opinion that this is the settled law of that state. The great weight of authorities, however, would seem to indicate that other states have not adopted this rule. Thompson in his Commentaries on the Law of Negligence, Vol. 1, Section 765, says: “It is obvious, upon a moment’s reflection, that the work of blasting rocks, being absolutely necessary in excavating through beds of rock, in mining, in digging wells, in excavating foundations for buildings, in improving' roads and streets, in digging canals, and in building railways,—cannot under all circumstances be regarded as a nuisance per se and condemned as being negligent as a matter of law. On the other hand, it must be regarded—and the decisions so regard it—as a work which one proprietor may lawfully do upon his own land, provided he takes due care to avoid injuring persons and property in the vicinity, and subject to his obligation to pay damages for any injury which he does in case his blasting involves a direct invasion of the premises of an adjacent proprietor.” In Section 764, the rule is stated that a recovery may be had for damages to adjoining property from blasting: 1. Where dirt and stones are thrown by the blast upon the adjoining property, irrespective of the *155 question of negligence. 2. Where the work of blasting is done in a situation where it is necessarily dangerous to persons or property, whether the injury proceeds from the impact of rocks thrown or from atmospheric concussion, irrespective of the care or skill used. 3. In all other cases liability will attach to the person or corporation carrying on the dangerous employment where the work has been negligently done.
This would seem to be the rule in Ohio. This court affirmed without opinion the case of Columbus v. Williard, reported in 7 Circuit Court Reports, page 113, in which it was held that “A municipal corporation which proceeds with skill and care, and without malice, to drain a street for a lawful purpose, is liable to the owner of an abutting lot for such injury as may result to his soil from the withdrawal of its natural support, even though the support withdrawn consists of percolating waters and sand of such nature and so blended with the waters as to be inseparable from them.” In this case it is not necessary to extend the rule of liability that far. In that case it does not appear from the report that the damage caused was the necessary, natural or probable consequence of the act of the defendant. Not only that, but it involved the question of percolating waters.
We think the correct rule is stated in the case of City of Tiffin v. McCormack, 34 Ohio St., 638, in which it was held that: “Where the owner of a stone quarry, by blasting with gunpowder, destroys the building of an adjoining land owner, it *156 is no defense to show that ordinary care was exercised in the manner in which the quarry was worked.” Judge Mcllvaine in that case said: “Neither can one in possession of a parcel of land operate and manage a mine or quarry upon it in such manner as to injure or destroy the property of an adjoining proprietor, justify himself by showing that he used ordinary care in the use of his own property.” In the case of Bradford Glycerine Co. v. St. Marys Woolen Mfg. Co., 60 Ohio St., 560, it was held by this court that: “Nitroglycerine is a substance usually recognized as highly explosive and dangerous, the storage of which at any place is a constant menace to the property in that vicinity. And one who stores it on his own premises is liable for injuries caused to surrounding property by its exploding, although he neither violates any provision of the law regulating its storage nor is chargeable with negligence contributing to the explosion.”
It is insisted by counsel for defendant in error that this case does not apply to the case under consideration, but when that case was before this court it was then contended that the authorities in reference to the use of explosives did not apply to that case because in one instance the party to be charged was actively engaged in the work that caused the injury, and purposely and intentionally caused the explosion, while in the other case he was merely using the premises to store the dangerous substance, not intending that it should explode; but this court held that both cases involved the same principle and in the discussion of that *157 question said: “The blasting doubtless is a menace to adjacent property, but so is the storing of a highly explosive substance.” In the cases of Defiance Water Co. v. Olinger, 54 Ohio St., 532, and Gas Fuel Co. v. Andrews, 50 Ohio St., 695, this question is further considered and discussed.
We are informed by counsel that the case of Armstrong v. City of Cincinnati, 12 C. C., N. S., 76, affirmed by this court, 82 Ohio St., 454, involved facts similar to the facts averred in the amended petition in the case now under consideration. In that cáse the trial court charged the jury that if the defendants exercised the highest degree of care in the use of explosives, they would not be liable for the damages resulting therefrom. The jury found for the defendant. The plaintiff prosecuted error to reverse this judgment upon two grounds: First, that the verdict was not sustained by sufficient evidence, and, second, for error in the charge of the trial court. The circuit court affirmed the judgment of the common pleas court, and among other things held there was no error in the charge of the court, citing in support of its conclusion the New York cases to which we have referred. The circuit court further found from an examination of the record that: “The jury might well find that the injury, if any, to plaintiff’s property was not caused by the work of defendants.” The fact that that case involved the weight of the evidence may have been the reason for its affirmance by this court. The law of this state in reference to this subject having been declared in the cases of City of Tiffin v. McCormack *158 and Bradford Glycerine Co. v. St. Marys Woolen Mfg. Co., supra, it would follow that if this court intended to depart from the doctrine announced in these cases it would have reported the case and overruled these authorities.
It is insisted by counsel for defendants in error that because no rock, soil or debris was actually thrown upon plaintiff’s premises there was no actual trespass, but neither was there such a trespass in the case of Bradford Glycerine Co. v. St. Marys Woolen Mfg. Co., supra. We are unable to distinguish between a case where a fragment of rock or a portion of the soil is thrown onto an adjoining property and a case where the force of an explosion is transmitted through the soil and substratum, jarring, cracking and breaking it, destroying the cistern and foundation of the building and wrecking the building itself by a concussion of the air around it, thereby doing far more injury than a fragment of rock could do. It is a distinction without a difference. If this terrific force may be set in motion by the owner of one parcel of ground, with full knowledge upon his part that such force will invade, damage and destroy the property of the adjoining proprietor, what difference does it make how this force accomplishes the result that, in the very nature of things, must have been anticipated? Is not a concussion of the air and jarring, breaking and cracking the ground with such force as to wreck the buildings thereon as much an invasion of the rights of the owner as the hurling of a missile thereon? If there is any difference whatever, it *159 is purely technical, and ought to find • no favor with the courts. Certainly the application of a force sufficient to crack the surface of the land to such a depth as to destroy the foundations of buildings, to break windows, and throw down chimneys, is a direct invasion of property rights.
The amended petition does not aver in terms that the injury to plaintiff’s property was the natural, or necessary, or probaole, result of defendants’ acts, but it does aver a trespass, and it also avers that these explosives were exploded in such close proximity to plaintiff’s premises and that they were of such great power and frequency, day and night, that they did result in the destruction of plaintiff’s property. It was not one single explosion, the result of which defendants might not have forseen, but it was a continuous bombardment, which finally resulted in the injury complained of. It is not necessary that a pleader should draw a conclusion from the facts pleaded. It is sufficient if the allegation of the petition states the facts upon which plaintiff relies for recovery, and if the plaintiff is able to maintain by proofs the allegations of her amended petition, she is entitled to recover for the damages resulting from the invasion of her rights and the destruction of her property.
The judgment of the circuit court affirming the judgment of the common pleas court and the judgment of the common pleas court sustaining the demurrer to the petition, are reversed, and the cause remanded to the common pleas court with *160 directions to overrule the demurrer to the petition, and for further proceedings according to law.

Judgment reversed.

Nichols, C. J., Johnson, Wanamaker, New■man and Wilkin, JJ., concur.