JOSEPH BATES *vs.* JOHN P. RAY & another.

Under the Gen. Sts. *c.* 149, § 4, damages for injury by flowing to separate parcels of land. if caused by the same dam, may be recovered in one complaint, brought in the county where either of the parcels lies.

In estimating damages on a complaint for flowing land, regard is generally to be had to what would have been the ordinary state of the land had no dam existed, although the dam was erected and had affected the land many years before the period covered by the complaint; and no regard is to be paid to the fact that the land had become deteriorated by the flowing when purchased by the complainant.

On the trial, before a sheriff's jury, of a complaint for flowing land, it appeared that the water set back by the respondents' dam submerged a passageway leading to a parcel of the land; and there was nothing to show that other means of access could be provided at a reasonable expense by the landowner. *Held*, that a refusal by the sheriff to instruct the jury that, if the owner of the parcel, being deprived of access to it, left it uncultivated, so that it ran to waste and deteriorated, he could not recover damages on the basis of what the condition of the land would have been, had it been cultivated, afforded no ground of exception to the respondents.

COMPLAINT under the Gen. Sts. *c.* 149, for flowing the complainant's land by a dam belonging to the respondents, from January 1, 1865, to August 10, 1868, the date of the complaint.

At the trial before a sheriff's jury it appeared that the land flowed consisted of three tracts; the first in Mendon in this county; the second in Bellingham in the county of Norfolk, separated from the first by Charles River; and the third in Bellingham, and not adjoining either of the other tracts; that the dam was originally built in 1821, raised higher in 1859, and purchased by the respondents in 1863; that on April 13, 1867, the complainant purchased the land flowed; and that a former owner of the dam had paid to a former owner of the complainant's land, from year to year, damages for flowing, for the period of three years ending in 1854.

There was evidence, admitted against the objection of the respondents, tending to show that since about 1863 the flowing of the lands in summer by the dam had rendered them less productive than formerly when they were flowed only in the winter; that the quality and character of the land had, by reason of the maintenance of the dam, gradually changed, since the erection of the dam in 1821, from grass land to swamp land; and that a passageway across the river between the first two tracts was, upwards of twenty years ago, in consequence of the maintenance of the dam, submerged, and so continued, and by reason thereof the owners of the second tract could not get their crops therefrom or pasture cattle there, and the tract had deteriorated and run to waste.

The respondents asked the sheriff to rule that damages were not recoverable for injury to either of the tracts in Norfolk; " that in estimating damages regard should be had to the state and condition of the land at the time the complainant became the owner thereof, and such state and condition should be made the basis of computing damages; that if, by the effect of the dam as maintained by former owners, the land, or any part thereof, was changed in its character, as the natural and necessary consequence of keeping water upon it, from grass land to swamp land, and after such change the complainant purchased

it, the jury, in giving damages against the present owners of the dam, could not adopt, as a basis, the state and condition of the land before any dam was maintained, but should have regard to its state when the complainant became the owner thereof; that if the former owner of the land received yearly damages for flowing the land from the former owner of the dam, and any change in the condition of the land was then in progress, no damages could be given for such change; that if, in consequence of the maintenance of the dam by a former owner, a passageway across the river was submerged and destroyed, (the land being then owned by a former owner,) and such owner of the land, being thereby deprived of access to it, left it unpastured and uncultivated, so that it ran to waste and deteriorated in value, and while in this condition the complainant purchased it, he could not recover damages against the present owners of the dam on the basis of what the condition of such land would have been, had it been pastured and cultivated, although the passage continued to be obstructed by the respondents' dam; and that if, in consequence of flowing in the summer season, done by a former millowner, the land was changed in its character and became less productive, but before the complainant became the owner, the jury could not give damages against the present owners of the dam, flowing in the summer, on the basis of the state of the land before such summer flowing originally took place."

The sheriff refused to give any of these instructions, and instructed the jury "that in estimating damages regard should be paid to the state and condition which the several tracts belonging to the complainant would have been in in their ordinary condition, if no dam had been erected; and that the change of ownership of the land flowed or damaged was of no consequence in estimating the annual or gross damages." The jury found for the complainant, and the respondents alleged exceptions, which were overruled in the superior court, and thereupon they appealed.

*H. B. Staples & F. P. Goulding*, for the respondents.

*T. G. Kent*, for the complainant.

COLT, J.   The venue, in the process by complaint for flowing damages, is regulated wholly by the Gen. Sts. *c.* 149, § 4.   The person, whose land is overflowed or injured, may obtain compensation therefor by complaint, to be made to the superior court for the county where the land or any part of it lies.   And the reasonable construction of the statute is, that all the land of the complainant, which is subject to injury from the same dam, though it consists of several distinct and separate parcels, situated in different counties, may be embraced in one complaint, brought in the county where any of it is located.   The construction contended for by the respondents would multiply litigation, without adding any protection to the rights of either party.   There is nothing in the language used which manifests an intention to confine its application to the case of a single tract lying partly in the county in which the suit is brought. See the Gen. Sts. *c.* 123, § 2, and *c.* 63, § 23.

The rule for estimating the damages, which was given by the sheriff, required the jury to consider what would have been the ordinary state and condition of the several tracts of land, during the time covered by the complaint, if no dam had been erected. This was in accordance with the decision in *Palmer Co.* v. *Ferrill,* 17 Pick. 58, 66; and involved in this case, as in that, an inquiry into the condition of the land at the commencement of the injury, when the dam was first erected.   As a general rule, the jury are required to assess, for annual damage, so much as the value of the annual improvement is diminished, as compared with what it would have been had no dam ever been erected; and there is nothing exceptional or peculiar in this case, which requires any qualification of the rule.

The deteriorated condition of the lands, at the time the complainant became the owner, caused by the previous flowing of them, cannot be made the basis upon which the damage is to be computed.   The liability of the respondents is not affected by a conveyance of the land flowed.   This would be to give to the millowner a reduction of damages whenever there was a change of ownership.   The fact that the land is purchased in a condition affected by flowage, does not change the rule

above stated, but the benefit of it passes by the deed to the pur.
chaser.

All the evidence offered at the trial, and objected to by the
respondents, upon this ground, was therefore properly admitted,
and the instructions asked which were not in conformity with
the rule here stated were properly refused.

There was evidence tending to show that, in consequence of
the maintenance of the dam by former owners, a passageway
across the river, between two of the lots described, was sub-
merged and destroyed, more than twenty years before, and the
then owner was deprived of access to one of the lots; and that
it was accordingly left uncultivated, ran to waste, and was de-
teriorated in value when the complainant purchased it. The
sheriff was asked to instruct the jury that damages could not be
recovered on the basis of what the land would have been, had
it been pastured and cultivated, although the passageway re-
mained obstructed by the dam.

It is true that no allowance can be made for remote or specu-
lative damages, produced by other causes than raising water by
the dam, as for instance those which are the result of the com-
plainant's own neglect. But if the flowing water separates one
part of the complainant's land from another, so as to render
bridges or new causeways necessary, it is a direct injury for
which damages are to be awarded, and the cost of the new
structure would in some cases be a proper measure of the injury
Where the value of the land so separated is not enough to jus-
tify the outlay, the damages under this rule must be limited to
the loss of productive value.

Here the whole value of the passageway consisted, appar-
ently, in the fact that it rendered the improvement of the lot in
question practicable; and the deterioration in the annual produc-
tion of the land, which resulted from the destruction of the way
and the consequent want of cultivation, was therefore a just
measure of the damage resulting from its loss. It is not sug-
gested that any portion of the injury, which makes up this ele-
ment of damage, might have been avoided by other means of
access to the land, which the complainant might have provided

at reasonable expense. The case discloses nothing which seems to require the application of the rule, that all damages should be excluded which the party injured might easily have avoided by his own act. There was no request for any such instruction. And it does not affirmatively appear upon the whole case that any injury resulted to the respondents by the refusals or instructions of the sheriff. *Eames* v. *New England Worsted Co.* 11 Met. 570. *Loker* v. *Damon,* 17 Pick. 284, 288.

*Exceptions overruled.*