JAMES MEARS vs. WILLIAM H. DOLE.

Norfolk.  Jan. 23, 24. — Sept. 8, 1883.  FIELD & W. ALLEN, JJ., absent.

A person who excavates on his land in such a manner as to let in the sea, which
    undermines and injures adjoining land of another, is liable to an action by the
    latter for the injuries so caused, including injury done to a well by the per-
    colation of salt water.

Upon the hearing of a bill in equity to restrain the defendant from excavating on
    his land so as to let in the sea and injure adjoining land of the plaintiff, it ap-
    peared that the plaintiff had recovered damages in an action at law against the
    defendant for injuries resulting from the same cause; and that a master, to
    whom the equity cause was referred, was not furnished with sufficient evidence
    to determine for what acts damages were assessed in the action at law.  Held,
    that, on amending the bill by adding a prayer for the assessment of incidental
    damages, the case should be recommitted to the master to assess all the dam-
    ages sustained by the plaintiff from the excavations of the defendant, which he
    could not have recovered in the action at law, and for such future injuries as
    would probably result therefrom.

COLBURN, J.  This is a bill in equity.  As appears from the
bill, answer and master's report, the plaintiff and the defendant
both own lands bounded northwesterly by the sea in Quincy
Bay, in Boston Harbor; the lands of the defendant being
bounded easterly and northeasterly and in part northwesterly,
on land of the plaintiff (a part of the plaintiff's land extend-
ing between the defendant's land and the sea).  The shore on
both the plaintiff's and the defendant's lands, being composed
of gravel and shingle, had become compacted and indurated, so
that so far back as can be ascertained, at least for nearly two
hundred years, there had been no substantial change in the
shore line.  The defendant excavated and carried away for
sale the soil and gravel from his land, down to low-water mark,
from the sea for a considerable distance inland, and near to the
lines of the plaintiff's land, but not so near that, except for the
action of the sea, his lands would have been undermined and
fallen in.

It is a matter of common knowledge, that the rise of the tide
in Boston Harbor is ten or twelve feet.  The consequence of
this excavation has been, through the action of the sea, that the
plaintiff's lands have been undermined and have fallen, and have
been washed into the excavation of the defendant, the soil in
places has been washed away by being overflowed by the sea

at high tides, and the gravel and shingle have been washed from the base of a hill along the shore, at some distance from the excavation of the defendant, so that the soil of said hill is caving, and is being carried by the action of rains, frosts and melting snows' down to the shore, and the plaintiff's well has been rendered at times brackish.

The defendant contends that to take away the soil, gravel, and other material from his land, is a natural and reasonable use of his land; and that to deprive him of that use would render his land comparatively worthless.

Without discussing at length the question of the natural and non-natural uses of land, which has been considered in some cases, we are of opinion that a person has no right to carry away the gravel or other material of his land, if the consequence would be to turn a watercourse, or to let in the sea, so as to inundate or injure the land of his neighbor. As said by Chief Justice Shaw in *Commonwealth* v. *Alger*, 7 Cush. 53, 86: " All real estate, inland or on the sea-shore, derived immediately or remotely from the government of the State, is taken and held under the tacit understanding that the owner shall so deal with it as not to cause injury to others; that when land is so situated, or such is its conformation, that it forms a natural barrier to rivers or tidal watercourses, the owner cannot justifiably remove it, to such an extent as to permit the waters to desert their natural channels, and overflow, and perhaps inundate fields and villages, render rivers, ports and harbors shallow, and consequently desolate, and thereby destroy the valuable rights of other proprietors, both in the navigation of the stream, and in the contiguous lands." " Ordinarily, and when no such circumstances exist, the owner of land has a perfect right to use and remove the earth, gravel and clay of which the soil is composed, as his own interest or convenience may require. But can he do this when the same materials form the natural embankment of a watercourse? He may say, perhaps, that he merely intends to make use of materials which are his own, and to which he has a right, and for which he has other uses. But we think the law will admit of no such excuse; he knows that, when these materials are removed, the water, by the law of gravitation, will rush out, and all the mischievous consequences of

diverting the watercourse will follow." See *Attorney General* v. *Tomline*, 40 L. T. (N. S.) 775.

The defendant by his excavations, for his own purposes, brought the sea upon his land, where it would not have been but for the excavations, and as a consequence it has escaped, and acted upon the plaintiff's land so as to cause damage, and for this he must be held responsible. *Fletcher* v. *Rylands*, L. R. 1 Ex. 265, 279; L. R. 3 H. L. 330, 339. *Smith* v. *Fletcher*, L. R. 7 Ex. 305. *Wilson* v. *New Bedford*, 108 Mass. 261. It is true that the injury was caused by the natural action of the sea; but this action was exerted at a place where it would not have occurred except for the acts of the defendant. The fact that the water was not accumulated and kept on the defendant's land is immaterial; it was by his acts caused to come there, twice a day, probably causing more damage than if it had been dammed up there.

It is well settled to be an actionable tort to allow filthy water to percolate from a vault through the soil, to the injury of a well or cellar of a neighboring proprietor. *Ball* v. *Nye*, 99 Mass. 582. Though sea-water may not be filthy water, it is as effectually destructive to a well for domestic purposes as is such water. A person is liable for injuries caused by the percolation through the earth of water, artificially introduced or accumulated upon his land, to the cellar, well or vegetation of a neighboring proprietor. *Fuller* v. *Chicopee Manuf. Co.* 16 Gray, 46. *Wilson* v. *New Bedford, ubi supra. Pixley* v. *Clark,* 35 N. Y. 520.

It is urged by the defendant, that the sea is regarded as a common enemy, and that it is a rule that each man may defend himself against its encroachments as best he can, even if thereby it washes against his neighbor's land. This may be so, but the rule has no application to the case at bar. The defendant was not protecting himself against the common enemy; he voluntarily introduced the enemy upon his land, and allowed it to escape from there to the injury of the plaintiff.

The defendant contends that no action can be maintained against him at the suit of an individual, but that the remedy is by indictment. Whatever rights the Commonwealth may have in tide waters or the sea-shore, it has never attempted, so far as

we are aware, by any legislative acts, to do more than protect navigation, by preserving the integrity of the harbor; and if the defendant is liable to indictment, the plaintiff is not thereby deprived of his right of action. His damages are special and peculiar, and are not sustained in common with the public, or, so far as appears, with any other individual. *Wesson* v. *Washburn Iron Co.* 13 Allen, 95. *Brayton* v. *Fall River*, 113 Mass. 218.

We are of opinion that for such injuries to his land as the plaintiff showed were the direct result of the excavations made by the defendant, in changing the action of the sea, he is entitled to recover.

We do not understand from the master's report that he assessed any damages for injury to the driftway. The driftway was upon a natural dike, which protected the plaintiff's land from the sea; and it was for injuries caused by cutting away this natural dike, as part of the defendant's excavation, that damages were assessed, and not for the loss of the driftway, as a way, as we construe the report.

It appears that, on September 25, 1876, the plaintiff brought an action at law against the defendant, in which he recovered damages for injuries resulting from digging and carrying away gravel. The defendant contends that damages must in that case have been assessed for the injuries then received, and such as would in the future result from the excavation made at the time that action was brought; and that, as the master has assessed damages for all injuries which have resulted since September 25, 1876, he must have included some damages which were embraced in the assessment in the former suit. This objection of the defendant, that he has been subjected to double damages, may be well founded. The master had no facts before him from which he could determine whether or not any part of the damages he assessed were recovered in the former suit. He states in his report that he had "not been shown how great an excavation had been made by the defendant on September 25, 1876, or how much that excavation had been increased since that date." It was the duty of the plaintiff, in claiming incidental damages in this suit, to show what such damages were. They were such damages as he had sustained from the defendant's unlawful acts, for which he could not have recovered in

the former suit. And to show for what he could, or could not, have recovered in the former suit, it was necessary for him to show as far as possible the extent of the excavation on September 25, 1876, and the progress or changes, if any, made in the excavation between that date and the time damages were assessed in that suit. If the defendant had ceased to excavate on September 25, 1876, and did not resume until after the assessment of damages in the former suit, the plaintiff was entitled to recover in that suit such damages as he had sustained at the time of the assessment, and such as would probably result in the future from that excavation, or such expense as he might be obliged to incur to prevent future damages, as these damages would all be the result of the cause of action for which the suit was brought. But if, after September 25, 1876, and before the assessment of damages in the first suit, the defendant had enlarged and changed his excavation, so as to cause damages to the plaintiff, in amount or kind, which would not have resulted from the excavation as it existed when the action was brought, so that a new cause of action accrued to the plaintiff, in which the original cause was merged, he could only recover such damages in the first action as had resulted while that cause of action continued. *Warner v. Bacon*, 8 Gray, 397. *Troy* v. *Cheshire Railroad*, 3 Foster, 83, 101.

As the master had no evidence before him upon which he could determine these questions, there must be a reassessment of damages; and, upon being furnished with the proper evidence, the master will be able to determine, with as much accuracy as the nature of the case admits, what damages were recoverable in the former suit, and what are incident to the suit at bar.

It appears that the master allowed, as part of the damages assessed, the expense of erecting structures to prevent further damage, which the master finds must result after October 9, 1880, if the defendant then ceased to excavate, unless such structures were erected. We do not understand that he assessed the expense of any structures to repair past damages, or assessed damages for any injuries which might result in the future from excavations made up to October 9, 1880, except so far as assessing the expense of structures to prevent future damages may be considered as practically an assessment of future damages. It

does not appear what these structures were to be, or when or where they were to be erected, or their estimated cost. We can understand that structures might in some cases be erected, which would prevent future injury, at much less cost than would compensate for the injuries if not prevented. If the defendant had been restrained by injunction from making any further excavation, or had permanently desisted from all further excavation, the plaintiff would have been entitled to recover for such future injuries as would probably result from the excavation already made; and if the plaintiff could prevent such injuries by erecting structures at a less cost than the injuries would amount to, the defendant could not complain that he was required to pay the cost of such structures, rather than damages for the injuries. This principle of assessing the costs of structures to prevent future damages is recognized in *Bates* v. *Ray*, 102 Mass. 458, and in *Fowle* v. *New Haven & Northampton Co.* 112 Mass. 334. This case does not depend upon the same principles, as to damages, as the cases cited by the defendant, relating to damages for injuries resulting from the loss of lateral support of land. In this case, the plaintiff was not directly deprived of the support to his land of the land of the defendant. The defendant introduced a destructive element upon his land, which he suffered to escape to the injury of the plaintiff's land, and to continue its devastations indefinitely.

As the case must be recommitted to the master to revise his assessment of damages, and as the defendant has now been enjoined from future digging, in order to settle the whole controversy between the parties, and give the plaintiff all the damages to which he is entitled as incident to the relief he seeks, the case should be recommitted to the master to assess all the damages sustained by the plaintiff from the excavations of the defendant which he could not have recovered in the former action, and for such future injuries as are probably to result, if any; and, if the cost of structures to prevent future injuries is assessed, to report the nature and estimated cost of such structures, and the estimated future damages they are expected to prevent.

This case has been treated by counsel and the master, and in the decree, as if the question of incidental damages was open under the bill, but the only prayer of the bill is for an

injunction. The bill may be amended by adding a prayer for the assessment of incidental damages. The decree entered in this case, dated June 27, 1881, and filed August 2, 1881, is to stand, as entered, except as to the damages and costs ordered to be paid, and the case recommitted to the master for the assessment of damages as above indicated.

*W. Gaston & G. H. Towle*, (*G. A. A. Pevey*, with them,) for the defendant.

*E. Avery & G. M. Hobbs*, for the plaintiff.