JAMES CORK & another *vs.* BARNEY BLOSSOM & another.

Bristol.    October 26, 1892. — November 1, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Injury to Property by Fall of Chimney on adjoining Premises — Negligence*
*— Action — Defence.*

If a person builds and maintains upon his premises a chimney so that, if it falls,
it will fall upon and injure the adjoining premises, he is bound, in the exercise
of proper care, to construct it so that it will withstand any gales which experi-
ence shows are reasonably to be anticipated in that locality, and he is liable
for injuries caused by the neglect of his obligation in this respect; and the facts
that he had the chimney examined by an experienced mason, who pronounced
it safe, and relied upon his opinion, constitute no defence.

TORT, for injuries occasioned to the plaintiffs' property by the
fall upon it of a chimney built and maintained by the defendants.
At the trial in the Superior Court, before *Braley*, J., the jury
returned a verdict for the defendants; and the plaintiffs alleged
exceptions.    The facts appear in the opinion.

The case was submitted on briefs to all the judges.

*A. N. Lincoln & A. H. Hood*, for the plaintiffs.

*J. F. Jackson & D. F. Slade*, for the defendants.

MORTON, J.    At the time of the injury complained of, the
defendants owned, and operated, a saw and planing mill.    The
plaintiffs occupied a building for a reed and harness shop on the
adjoining premises.    In connection with their mill the defend-
ants maintained a chimney, which, there was testimony tending
to show, extended about forty feet above the roof of the mill.
It was twenty-eight inches by thirty-two, and was built of a
single course of brick about four inches thick, and was stayed
on three sides, but not on the side towards the plaintiffs.    Some
time during the night of March 9 or early morning of March
10, 1891, the chimney fell, crushing in the roof of the building
occupied by the plaintiffs, and injuring machinery and property
belonging to them.    The defendants introduced evidence tend-
ing to show that during the night of March 9th and early morn-
ing of March 10th there was a heavy gale, the wind ranging

from thirty-five to forty-eight miles an hour. The plaintiffs introduced testimony tending to show that gales of from thirty-six to forty-eight miles an hour were not infrequent in Fall River during the spring and winter months, and that the wind sometimes attained a greater velocity, having reached sixty miles an hour three times during the two years prior to the trial. There was testimony tending to show that the defendants caused the chimney to be examined by an experienced mason, who pronounced it all right, and that they relied on his opinion. There was other testimony on both sides as to the condition and safety of the chimney, to which it is not necessary now to refer.

The plaintiffs, in substance, requested the court to instruct the jury that the defendants were bound to build and maintain the chimney so that it would not fall and injure their neighbors, and were liable unless its fall was the result of inevitable accident, or of the wrongful acts of third persons which they could not reasonably anticipate; and that, in the absence of such proof, the fact that it fell was sufficient evidence of negligence, whether the defendants did or did not know that it was unsafe. The court declined to give these instructions, but instructed the jury, in substance, that ordinary care was the test; that the plaintiffs must show that, taking into account the location of the chimney and its proximity to the property of the plaintiffs, the defendants either did or omitted to do something which an ordinarily prudent man would not have done or omitted to do; that the defendants would not be liable for hidden defects which could not be discovered by the use of ordinary care; and that the fact that the defendants employed a competent mechanic to examine the chimney, and relied on his opinion, might be considered in passing upon the question of ordinary care.

The first question, and the fundamental one, is what, under the circumstances, was the duty of the defendants *quoad* the plaintiffs in regard to the erection and maintenance of the chimney.

As compared with the great majority of chimneys in cities and towns, the chimney was carried to an unusual height above the roof; though as compared with chimneys built for manufacturing establishments, or the high buildings in large cities, or steeples

and towers on churches and similar edifices, it was not uncommon, except perhaps in the mode of its construction. It was, however, a lawful structure. There is no law forbidding one from building to any height that he chooses on his own premises, and there is nothing to show that the chimney violated any city ordinance. But it evidently was built so near the line that when it fell it fell on to the adjoining premises. The proximate cause of its fall was the gale. If the gale had been of such unprecedented force that the experience of the people in that vicinity furnished no reason to anticipate its occurrence, then the doctrine of *vis major* or inevitable accident well might apply. But there was testimony to show, not only that such gales were not infrequent during the spring and winter months, but that they sometimes attained a greater velocity. The defendants were bound to have regard to these facts in building and maintaining their chimney. If they placed or maintained it so that, if it fell, it would fall upon and injure the adjoining premises, they were bound, in the exercise of proper care, to construct it so that it would withstand any gales which experience showed were reasonably to be anticipated in that locality. *Gray* v. *Harris*, 107 Mass. 492. To build and maintain a chimney or other structure so that it is liable to be blown down by a not infrequent gale, and so that, if it is blown down, it will fall upon and injure a neighbor's property, is like maintaining a building so out of repair that it is liable to fall, and ultimately does fall, upon and injure the adjoining premises. Such a building clearly would be a private nuisance. The defendants are not to be regarded as insurers, and consequently would not be liable if the fall occurred through a hidden defect which no foresight or examination could have discovered or prevented. And their liability may not be like that of those who keep animals whose known habit is to stray, or who keep dangerous animals which are a source of danger in themselves to others; or who store gunpowder in thickly settled neighborhoods, or who blast rocks on their own premises but under such circumstances that the flying fragments may damage others, and who in a sense may be said to impart to them their force and direction; or who construct buildings so that they will discharge snow, ice, or water upon adjoining premises or upon those passing in the street; or

who cause noise, or smoke, or dust, or fumes, or filth, which escape and injure the health, or materially interfere with the comfort and enjoyment of others. But parties erecting upon their own land chimneys, or walls, or other structures so situated that they may fall upon and injure the persons or property of others, are bound, at their peril, to use proper care in their erection and maintenance. By proper care is meant such degree of care as will prevent injuries from any cause except those over which the party would have no control, such as *vis major*, acts of public enemies, wrongful acts of third persons, and the like, which human foresight could not reasonably be expected to anticipate and prevent. If, for instance, one chooses to build upon a quicksand a structure so near the line that, if it falls, it will fall upon and injure the adjoining premises, or to hang out a lamp over the highway, it is reasonable and just that he should be bound, at his peril, to use all known devices to make the foundation secure, or to keep the lamp from falling.

The duty thus resting upon the defendants was one which they could not fulfil by the employment of a competent mason to examine the chimney, and by relying upon his opinion. As far as it went, it was an absolute duty, and nothing short of actual performance of it, or a fall of the chimney due to some one of the excepted causes, would excuse them. It is almost needless to add, that the fall of the chimney, unless caused by some one or more of the excepted causes, naturally would lead to the inference of an omission of duty in building or maintaining it. The following authorities may be cited, which support, in whole or in part, the principles above laid down as applicable to this case. The collection is not intended to be exhaustive. *Ball* v. *Nye*, 99 Mass. 582. *Wilson* v. *New Bedford*, 108 Mass. 261. *Gray* v. *Boston Gas Light Co.* 114 Mass. 149. *Mahoney* v. *Libbey*, 123 Mass. 20. *Gorham* v. *Gross*, 125 Mass. 232. *Mears* v. *Dole*, 135 Mass. 508. *Moreland* v. *Boston & Providence Railroad*, 141 Mass. 31. *Khron* v. *Brock*, 144 Mass. 516. *Smethurst* v. *Barton Square Church*, 148 Mass. 261. *Nichols* v. *Marsland*, L. R. 10 Ex. 255 ; *S. C.* 2 Ex. D. 1. *Tarry* v. *Ashton*, 1 Q. B. D. 314. *Nitro Phosphate & Odanis Chemical Manure Co.* v. *London & St. Katharine Docks Co.* 9 Ch. D. 503, 515. *Lawrence* v. *Jenkins*, L. R. 8 Q. B. 274. *Bensen* v. *Suarez*,

28 How. Pr. 511.   *Mullen* v. *St. John*, 57 N. Y. 567.   *Gagg* v. *Vetter*, 41 Ind. 228.   *Scott* v. *Bay*, 3 Md. 431.   *Tiffin* v. *McCormack*, 34 Ohio St. 638.   *Cooper* v. *Randall*, 53 Ill. 24.   *Cahill* v. *Eastman*, 18 Minn. 324.   *Hannem* v. *Pence*, 40 Minn. 127. *Phinizy* v. *Augusta*, 47 Ga. 260.   *Georgetown, Breckenridge, & Leadville Railway* v. *Eagles*, 9 Col. 544.   *Kinnaird* v. *Standard Oil Co.* 89 Ky. 468.   See also Wood, Nuisances, (3d ed.) §§ 109, 110, 118, 119.   Pollock, Torts, 393, 394.

It is also to be observed, though we do not lay much stress upon it, that there is nothing to show that the chimney might not have been built farther from the plaintiffs' premises, or of a less height.

The remaining question is whether the instruction requested by the plaintiffs was sufficient to call for an instruction as to the rule of responsibility by which the defendants were bound. We think that, though not expressed with entire precision, it was. The plaintiffs were not entitled to have the instruction given as requested, but they were entitled to have the rule of law stated by which the liability of the defendants was to be determined.   *Foss* v. *Richardson*, 15 Gray, 303.   *Brightman* v. *Eddy*, 97 Mass. 478.   *King* v. *Nichols*, 138 Mass. 18.   For reasons already given, the instructions, in the opinion of a majority of the court, did not adequately express the duty and obligation which rested upon the defendants.          *Exceptions sustained.*