JENNIE M. QUINN, administratrix, *vs.* TIMOTHY CRIMMINGS.

Middlesex.    March 10, 11, 1898. — May 20, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Falling Fence — Liability of Owners of Division Fence.*

If as between two adjoining owners the duty to maintain a partition fence is upon one of them exclusively, the other owner is not liable to a third person for a personal injury caused by the fall of the fence.

If the owner of a partition fence uses the care of a prudent man in maintaining it, he is not liable to a third person for a personal injury caused by its fall.

TORT, by the administratrix of Peter L. Quinn, for injuries sustained by her intestate from the falling of a division fence, which, it was alleged, the defendant suffered to remain in an unsafe condition. At the trial in the Superior Court, before *Bond,* J., the jury returned a verdict for the defendant; and the plaintiff alleged exceptions. The material facts appear in the opinion.

*S. A. Fuller & C. H. Blood,* for the plaintiff.

*H. N. Shepard,* for the defendant.

HOLMES, J. This is an action to recover for personal injuries suffered by the plaintiff's intestate, of which he afterwards died. The deceased had gone to a drinking place, had drunk one glass of whiskey and was leaving the place, when a fence dividing the premises from the defendant's land fell upon him without warning. The testimony was that the deceased was sober, and was

doing nothing to cause the fence to fall. The jury found for the defendant, and the case is here on exceptions to certain rulings and refusals to rule. It is not necessary to set these forth at length, as the questions raised by them and argued may be stated in a few words.

The first question is whether, if, as between the defendant and the owner of the premises where the intestate was, the duty to maintain the fence was on the latter, the defendant nevertheless could be held by the plaintiff; the argument for the plaintiff being that private arrangements with a neighbor could not affect the liability to him of an owner of the land on which presumably, it is said, the division fence stood in part.

It is true that there are cases where an immediately threatening danger is created upon the defendant's land by his order, and where the intervening control is not that of an occupant, in which the defendant is held to be bound personally to see that proper precautions for safety are taken, although he has given up the control to an independent person, as where he employs an independent contractor. *Woodman* v. *Metropolitan Railroad*, 149 Mass. 335. So a master has somewhat similar duties to a servant in his employ.

But examples of liability to the public being affected by private arrangements are not unknown. A landlord may shift his responsibility for snow falling from the roof of his house into the street by giving control to a tenant, and will have the right to rely upon the tenant's managing the premises in such a way as to prevent their becoming a nuisance. The fact that action, and not merely abstinence from illegal acts, on the part of the tenant is required to prevent the harm is not conclusive. *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47, 49. Compare *Murphey* v. *Caralli*, 3 H. & C. 462, 465, 466, judgment of Bramwell, B. So where a tenant has covenanted to repair, and an injury is caused by the premises being allowed to fall out of repair. *Pretty* v. *Bickmore*, L. R. 8 C. P. 401. *Gwinnell* v. *Eamer*, L. R. 10 C. P. 658. On the other hand, the landlord may be liable if he has covenanted to repair. *Payne* v. *Rogers*, 2 H. Bl. 350. In these cases all that was contemplated at the time of the lease was the continuance of a situation which by the forces of nature might become dangerous if the person intrusted did not do his duty.

If the transfer were absolute, every one would recognize that the responsibility was changed with the ownership. The same principle is applied when the occupancy and control are transferred for a certain time, and when there is no present nuisance, but the danger is relatively contingent and remote. The tenant unquestionably owes a duty to the public, and the landlord has a right to assume that he will perform it. The tenant is the wrongdoer nearest to the injury, and the law looks no further back.

The rule which has been applied in the case of landlords and tenants, not without some difference of opinion among the courts of different States, applies with greater force to division fences. The division of the duty of maintaining these is established by statute, and may be insisted on even against an unwilling neighbor. Pub. Sts. c. 36, §§ 1–19. The law makes the party who is bound to maintain the fence responsible to the public so far as they have any concern in the matter. There is no general *delectus personarum* as between him and the other possible defendant, his neighbor, and it would be unjust to add the other as jointly liable for the condition of a structure which he did not maintain and perhaps had no right to touch.

The other question arises with regard to the instructions given and refused concerning the defendant's duty, supposing he was responsible. The only evidence of the defendant's interest or duty was the fact that the fence was a division fence. The defendant had not repaired it for twenty years. He removed it, it is true, after it had fallen, but that was simply clearing away rubbish from his land, and was no evidence. It admits of question whether the plaintiff had sustained the burden of proof. He was allowed to go to the jury, however, and the jury were told that the defendant had not a right to allow the fence to get into such a condition that it was liable to injure a person on the adjoining premises by reason of its want of repair. This imposed an absolute liability for want of repair as effectively as if the judge had used the more amplified and rhetorical expressions of the requests.

After dealing with want of repair, the judge went on: " Of course you have to take into consideration here the condition of the fence, and whether or not it was that which caused it to fall

over; because if there had been any such extraordinary condition of things that it was blown over, and fell from any such cause as that, that might relieve the defendant from any responsibility, because he is not called upon to provide against such extraordinary conditions; but any conditions that he ought to have anticipated he is bound to provide against." A part of this was excepted to upon the refusal to modify it, as was also a refusal to give further rulings. Nothing appears in the exceptions concerning the state of the wind, and it does not appear that there was any need for the judge to deal with it more specifically, especially when the matter was not brought to his attention until the end of the charge. *McMahon* v. *O'Connor*, 137 Mass. 216. The fair meaning of what we have quoted, as a whole, is simply that the defendant was not called on to provide against winds which he could not have anticipated. This is consistent with *Cork* v. *Blossom*, 162 Mass. 330, 332. It is true that every one has notice of the force of gravitation, and therefore it would be possible logically to make owners absolutely liable if their buildings fall. Clerk & Lindsell, Torts, (2d ed.) 377, 378. *Rylands* v. *Fletcher*, L. R. 3 H. L. 330. Compare Pollock, Torts, (4th ed.) 470. But it is for the public welfare that buildings be put up, and here as elsewhere policy and custom have to draw the line between opposing interests. *Middlesex Co.* v. *McCue*, 149 Mass. 103, 104. That line is the line between what could have been prevented by proper precautions and accident, meaning by accident that which could not have been foreseen and guarded against otherwise than by not building. For although all accidents could be prevented by not building, yet, as it is desirable that buildings and fences should be put up, the law of this Commonwealth does not throw the risk of that act any more than that of other necessary conduct upon the actor, or make every owner of a structure insure against all that may happen, however little to be foreseen. *Cork* v. *Blossom, ubi supra.* The tendency of other American decisions seems to be in the same direction. 2 Jaggard, Torts, 839; see also Pollock, Torts, (4th ed.) 470. This being so, the decision as to what precautions are proper naturally may vary with the nature of the particular structure. A boundary fence is not like a tall chimney, such as was in question in *Cork* v. *Blossom*. In

view of the slight danger threatened by a common fence, we are of opinion that, if the jury are instructed that the owner must use the care of a prudent man in maintaining it, it is not necessary to put the duty in more emphatic terms.

*Exceptions overruled.*