Hillsborough, }
June 6, 1922. }

### MINNIE L. BIXBY *v.* GEORGE F. THURBER & a.

A landowner's liability for a defective roof wherefrom water pours onto a public sidewalk and freezing injures pedestrians is not terminated by a lease of the premises whereby the lessee covenants to keep the sidewalk free from snow and ice.

The lessee of such a building is liable for the failure to use reasonable care to prevent its causing such injuries.

Ordinarily the question whether a structure maintained in a way to affect the rights of others is a nuisance, is one of fact.

The rule that evidence of repairs made subsequently to an accident is not admissible to prove the defendant's admission of fault, does not prevent the use of such evidence for other purposes.

In an action between one party to a contract and a stranger thereto, the parol evidence rule is inapplicable.

CASE, to recover for injuries received by reason of a fall upon an icy sidewalk. Trial by jury and verdict for the plaintiff against both defendants.

Thurber was lessor and Hamlin lessee of a building abutting on the street. The roof pitched toward the street and the eaves gutters were out of repair, so that when it rained, or when snow melted upon the roof, water was discharged upon the sidewalk at the place

of the accident. The ice upon which the plaintiff slipped came from water falling from the defective gutters. The lease was for two years. It contained no covenant to repair, but the lessee covenanted to keep the sidewalk free from snow and ice. Other facts appear in the opinion.

The extent to which the landlord made repairs during the tenancy was a matter in dispute. The tenant offered evidence of repairs made by the landlord. It was ruled that evidence of repairs made before the accident was admissible, but that of repairs after the accident was excluded subject to Hamlin's exception.

The defendants' several motions for a directed verdict were denied, subject to exceptions. There were also exceptions to the charge, which are sufficiently stated in the opinion.

Transferred from the January term, 1921, of the superior court by *Sawyer,* J.

*Lucier & Lucier* and *Robert W. Upton* (*Mr. Alvin J. Lucier* orally), for the plaintiff.

*Streeter, Demond, Woodworth & Sulloway* and *Patrick H. Sullivan* (*Mr. Jonathan Piper* orally), for Thurber.

*Leonard F. Hamlin, Henri A. Burque, Warren, Howe & Wilson* and *Wason & Moran* (*Mr. Howe* orally), for Hamlin.

PEASLEE, J. Although there is one verdict against the two defendants, the questions concerning their several liabilities present different legal propositions. Their motions for a directed verdict raise the issue whether there was evidence upon which they or either of them could be found liable.

The landlord, Thurber, rests his claim of non-liability as matter of law chiefly upon the authority of decisions of which those in Maine and Massachusetts are typical. Those decisions are based upon the propositions that as matter of law the building was not a nuisance when leased, that if the landlord was in fault the later fault of the tenant was in law the proximate cause beyond which the law would not go, and that the landlord is excused unless there be proof that he expected the tenant to use the property in this way, that taking a covenant from the tenant to care for the situation is a full discharge of the landlord's duty to the public. It may be remarked at the outset that these propositions involve a question upon which the administration of the law in many other states

differs from the local view as to what are questions of law and what relate to fact only.

The conclusion reached in other states that the building was not a nuisance "in itself," although "it was certain to become so at times by the mere working of nature alone" unless steps were taken to prevent it (*Clifford* v. *Mills*, 146 Mass. 47; *Lee* v. *Mc-Laughlin*, 86 Me. 410), has been rested very largely upon assertion. No reason has been assigned for it. Ordinarily the question whether a structure maintained in a way to affect the rights of others is a nuisance is one of fact. *Graves* v. *Shattuck*, 35 N. H. 257; *Hall* v. *Brown*, 58 N. H. 93; *Nutter* v. *Pearl*, 71 N. H. 247.

"If the natural tendency of the act complained of is to create danger and inflict injury upon person or property, it may properly be found a nuisance as matter of fact; but if the act in its inherent nature is so hazardous as to make the danger extreme and serious injury so probable as to be almost a certainty, it should be held a nuisance as matter of law. While this definition lies on the border of the domain of fact, any definition of a nuisance at law must necessarily lie there, for it is a fact, but so conclusive in legal effect as to be treated as a matter of law. · Locality, surroundings, methods, the degree of danger, and the customs of the country are the important factors. . . . Degree implies gradation, and gradation depends on circumstances." *Melker* v. *New York*, 190 N. Y. 481, 488, 491.

As suggested in the Massachusetts case quoted above, the structure plus the mere operation of natural forces would work injury unless steps were taken to remedy the situation. Although no further human act was needed to complete the dangerous character of the situation, the conclusion was that the structure could not be complained of as a nuisance. This does not appear to be put upon the ground that damage must result before the landowner can be considered a wrongdoer in this respect, but rather that the events had not progressed sufficiently to treat the situation as one where a probable cause for future trouble had been established. The conclusion fails to give due weight to the fact that the structure was designed to remain until the elemental forces would operate upon it, and leaves out of consideration the rule that one may take preventive measures to save himself from future damages likely to be suffered because of a situation already made efficient to cause future injury. "An erection may be a nuisance at a time when it is causing no actual damage." *Amoskeag Mfg. Company* v. *Goodale*,

46 N. H. 53, 56. Damage not being an essential element in the wrong involved in the maintenance of a nuisance, the question how near to doing damage the structure must approach resolves itself very largely into one of fact.

If the fact that "half the householders in Boston are indictable" if such a building is a nuisance establishes the propriety of such structures, as matter of law, in Massachusetts (*Clifford* v. *Mills, supra*), the cases there rest upon the peculiar customs of that locality (*Melker* v. *New York, supra*), and are not applicable in· a region where the situation is different. There is in this case no evidence and no claim of a custom in this state to maintain a roof involving such dangers, or of using a leaky gutter to collect the water and pour it upon the public sidewalk. A finding that such a building was a nuisance was warranted. If the fact were so found, the liability of the landlord, as the creator of the nuisance, would not be terminated by a sale of the property. *Robertson* v. *Monroe, ante,* 258, and cases cited.

Other late Massachusetts cases seem to show that the non-liability of the landlord in that jurisdiction is not now rested upon the proposition that the situation had not become a nuisance, for if he has not taken from the tenant a covenant or agreement to care for the situation he may still be held liable if the situation is such "as will plainly lead to the creation of a nuisance." *Cerchione* v. *Hunnewell,* 215 Mass. 588.

Reliance is also put upon the cases holding that even if the landlord could be treated as a wrongdoer, still the failure of the tenant to take preventive measures must be treated as the proximate cause since "the tenant is the wrongdoer nearest to the injury, and the law looks no further back." *Quinn* v. *Crimmings,* 171 Mass. 255; *Cerchione* v. *Hunnewell, supra.*

Here again, as in the matter of the existence of a nuisance, the difference in view as to what is a question of fact renders the Massachusetts authorities inapplicable. The rule that the question of proximate cause is ordinarily for the jury has here been consistently followed. The application of the Massachusetts cases just referred to would not only be contrary to the local law as to proximate cause in general, but also in conflict with the recently reaffirmed rule as to continuing liability for a nuisance. *Robertson* v. *Monroe, ante,* 258, and cases cited.

Upon the first transfer of *Robertson* v. *Monroe* (79 N. H. 336), the rule as ·to proximate cause now urged was relied upon by the

defendants. It was claimed by those who had created a highway nuisance that another person thereafter negligently failed to care for the situation, and that therefore they were not liable. "It is suggested the adjoining landowner was in fault in not closing or obliterating the driveway or in neglecting to warn the plaintiff. Assuming this to be so, his negligence would not prevent a recovery against others whose negligence was cause for the injury." *Ib.*, 343.

When the later negligence is not a cause for the accident in a positive way, but consists merely in a failure to take steps to remedy a condition created by the defendant's prior fault, there is no sufficient ground for treating the later fault as the sole proximate cause, as matter of law. If in a case where both negligent acts are essential parts of the cause of the accident, the rule that the later one is in law the sole legal cause may apply (as suggested by *Ela* v. *Company*, 71 N. H. 1), the law in this state is clearly otherwise in a case like the one here presented. The distinction between an act in itself sufficient to do harm, if its effects are not averted, and an act which, though negligent, would not have resulted in harm in the particular case but for some added element contributed by a later wrongdoer, may be of importance in some cases. It is not involved here. The negligence of the tenant added nothing to the situation. As stated in *Robertson* v. *Monroe, supra*, the negligence of the landlord "was cause for the injury." It was not deprived of its character as legal cause by the mere failure of a third person to counteract its tendencies.

The idea that the landlord is relieved if the lease shows that he did not contemplate a continuance of the objectionable condition (*Cerchione* v. *Hunnewell, supra*) fails to reach the vital point in the case. Having created a nuisance, or that which would become one if nothing were done, the law imposed upon him the affirmative duty to take care of the situation. His mere expectation that another would do so is not enough. "Where the duty sought to be enforced is one imposed by law upon the defendant, he cannot escape liability by showing that he employed another, over whom he had no control, to perform it for him." *Pittsfield &c. Company* v. *Company*, 71 N. H. 522, 530.

The statement that the negligent failure of the tenant to act may be treated as cause as well as his misfeasance (*Quinn* v. *Crimmings, supra*) may be conceded to be sound, and still the landlord's liability, is not disposed of. As the latter owes the public a duty to act, he is not excused by contracting with another to act. Nor

would his transfer of the estate for a time excuse him. His liability is based upon the fact that he created a nuisance, and might exist if he had never owned and never rightfully possessed the property. *Fifield* v. *Bailey,* 55 N. H. 380.

The landlord had created a situation which required affirmative conduct for the protection of the public. If nothing at all were done, damage to others would result because of the situation which he caused to exist. There seems to be no valid reason for denying the proposition that one who creates such a situation must take care of it. There was no error in submitting the case against the landlord to the jury.

His exceptions to the refusal to charge as requested must also be overruled. So far as the requests correctly state the law applicable to the case, they are included in the charge. The jury were instructed that in order to recover against the landlord it must appear that he negligently maintained the defective roof or gutters and that the accident resulted from that cause. While the exact language of the requests as to the existence of a nuisance was not used in the charge, the instruction that it must appear that the landlord negligently maintained a situation dangerous to the public has the same meaning (*Robertson* v. *Monroe, ante,* 258) and has the advantage of being more readily understood by the jury. There was no claim that the condition of the building grew worse during the tenancy, and instructions based upon such a situation were not called for.

The tenant was in possession, and enjoying the use of the property. He may have been found to have been in full control of the premises, and if so, he was responsible for the way in which the property was cared for. He had ample notice that injury to travelers was likely to result if he did not take steps to relieve the dangerous situation. Upon these facts, the issue of his fault as cause for the accident is determined by the further fact as to whether he did all that a reasonable man, situated as he was, would do to see that the defective or improperly constructed building did no harm to others. As the lessee occupies the position of an adjoining owner toward those having adjoining property (*Towne* v. *Thompson,* 68 N. H. 317, 322), so also he is to be treated as the abutting owner as to those using the adjacent street. He had control of the outside of the building as well as the interior. *Riddle* v. *Littlefield,* 53 N. H. 503, 508. Being thus in possession and control, and having for the time being the position of an abutting owner, he had the duty to use reason-

able care in the management of the property, so far as it concerned the traveling public.

It is true, as he contends, that he is not liable for the faults of the landlord; but he is liable for his own. He is held to the exercise of such care as one having the control of such a faulty building would use. The argument that he did all that he could to care for the freezing condition at the time of the accident, if well founded, would not necessarily excuse him. It could be found that he had the usual tenant's right to make repairs, and it may have been found that his fault lay in not repairing the leaky gutters, which were likely to cause a situation incapable of present remedy when it arose.

The cases upon which the tenant relies give practically no support to his claim of non-liability here. Many of them recognize the rule which has been laid down in this state (*Eastman* v. *Company*, 44 N. H. 143, 156, and cases cited), that a tenant or grantee is liable upon notice and request to abate. *De Laney* v. *Railroad*, 58 S. C. 357; *Johnson* v. *Lewis*, 13 Conn. 303; *Philadelphia &c. Railroad* v. *Smith*, 12 C. C. A. 384; *Slight* v. *Gutzlaff*, 35 Wis. 675; *Wabash Railroad* v. *Sanders*, 47 Ill. App. 436; *Grigsby* v. *Company*, 40 Cal. 396. They are all cases of private nuisances, while this is a public one. If the rule of non-liability in the absence of notice of the objectionable situation can apply here, the tenant is not excused. He had abundant notice. And that part of the rule which is said to require a demand for an abatement of the nuisance has no application where public rights are involved. *State* v. *Hutchins*, 79 N. H. 132, 139.

The tenant excepted to the exclusion of evidence that the landlord made repairs upon the building after the accident. Evidence that subsequent repairs were made cannot be received as proof of fault in the situation. *Aldrich* v. *Railroad*, 67 N. H. 250. But this rule does not preclude the use of such evidence for other and proper purposes. *Dow* v. *Weare*, 68 N. H. 345. The offer by the tenant of evidence that the landlord made repairs, was for the purpose of showing what the relation of the parties was. It had a legitimate bearing upon this question.

The landlord's claim that the rights of the parties are settled by the terms of the written lease because of the parol evidence rule cannot be sustained. "In a suit at law between the parties to a written agreement, . . . extrinsic evidence is not admissible to contradict or alter its terms. The agreement does not conclude strangers. In a controversy between them, or between one of the contractors and a stranger, either party may show by parol that

the written contract was made by mistake or fraud, or that by design of the parties it misrepresents the true transaction." *Libby* ⟩v. *Company*, 67 N. H. 587, 588, and cases cited. This principle appears to have been applied at the trial, and evidence tending to show that the landlord retained some control of the exterior of the building was received. But there was error in limiting this evidence to repairs made before the accident. As before pointed out, the rule that evidence of subsequent repairs is not proof of prior fault, does not prevent the use of such evidence for another and proper purpose. Because of this error, the verdict against Hamlin must be set aside.

This result renders it unnecessary to consider his exceptions to the charge.

*Verdict against Hamlin set aside: judgment on the verdict against Thurber.*

All concurred.